[Civ. No. 12914. Second Dist., Div. Three. June 30, 1942.]

SAM BELL et al., Appellants, v. BAYLY BROS., INC. OF CALIFORNIA (a Corporation) et al., Respondents.

Salisbury, Robinson & Himrod and B. R. Ware for Appellants.

Chapman & Chapman for Respondents.

SHAW, J. pro tem.—The plaintiffs, as stockholders, each owning one share of preferred stock of Bayly Bros., Inc. of California, a corporation, (hereinafter referred to as "Bayly Bros."), brought this action to enforce certain alleged rights of that corporation, on allegations that its board of directors, all of whom are among the defendants, refused to act in the matter. Plaintiffs appeal from a judgment adverse to them rendered on a motion for a nonsuit.

The facts presented by the record are many and complicated, but only a part of them are important to a consideration of the point which we think determinative of the appeal. The complaint, which is labeled "Complaint for Conversion," contains two counts. The first count alleges that the corpora-

tion above named was the owner of 1666 2/3 shares of stock of National Oil Co., (hereinafter referred to as "oil stock") worth $50,000, which stood on the books of that company in the names of two trustees; that defendants Roy Bayly and Harold Bayly, acting for Bayly Bros., caused this oil stock to be transferred to other persons who are also defendants; that they did this without authority from the board of directors of such corporation and it received no consideration therefor; and that the named defendants and their transferees claim to be the owners of the stock. The second count incorporates all of the first except the allegations regarding the ownership and transfer of the oil stock, and in place thereof alleges that Bayly Bros. "now is" the owner of the oil stock and the individual defendants "unlawfully converted and disposed of the same to their own use." The relief demanded is the return of the oil stock or its value to the corporation. No dates are given for any of the acts of defendants complained of. The complaint was filed May 22, 1936. The answer, among other defenses, pleads that the action is barred by subdivisions 3 and 4 of section 338 of the Code of Civil Procedure. At the trial a motion for nonsuit was made and granted, one of the grounds of which was that the action is thus barred. On this ground the judgment must be affirmed.

Taking the view of the evidence most favorable to plaintiffs, as we must in passing on a motion for a nonsuit, we see the following facts: Bayly Bros. was engaged in the business of broker, dealing in stocks and bonds and other securities. It kept records of the names, addresses and stock holdings of its customers, and following the custom of those engaged in the same business, in order to maintain the goodwill of its customers, it kept them advised of what was happening to their securities. Bayly Bros. had sold to a number of its customers shares of stock of Signal Oil & Gas Co. (hereinafter referred to as "Signal") and owned shares of the same stock on its own account. In 1932 dissatisfaction with the management of Signal arose among some of its stockholders, including Bayly Bros. and its customers, and another Signal stockholder named Ross McCollum and his friends. This culminated in the formation of a stockholders' protective committee, consisting of the defendant Harold Bayly, the plaintiff Bell and Ross McCollum. After negotiations between this committee and the management of Signal and after various

proceedings, legal and otherwise, taken by the committee against that management, an offer was made by the latter to take over the stock of the dissatisfied Signal stockholders, amounting to 25,000 shares, in exchange for certain oil royalties. Thereupon a letter was drafted and presented for signing to the dissatisfied Signal stockholders which reads in material part as follows: "Los Angeles, California, December 15, 1932. MESSRS. ROSS MCCOLLUM AND HAROLD BAYLY, Los Angeles, California. Dear Sirs: You have informed us that representatives of Signal Oil and Gas Company have made an offer to take over twenty-five thousand shares of its outstanding capital stock owned or controlled by you and the undersigned, and in consideration thereof to assign and transfer to you . . . [describing certain oil royalties]. You have accorded to the undersigned an opportunity to transfer the number of shares set opposite their names below along with your own shares, on the basis herein set forth, and we are desirous of taking advantage of that opportunity.

"We have therefore delivered to you certificates evidencing the number of shares set opposite our names, respectively, of stock of the Signal Oil and Gas Company, properly endorsed and witnessed for transfer, and we now authorize you to deliver the same to Signal Oil and Gas Company, or its nominee, when you have received assignments or conveyances of the royalty interests above mentioned vesting the title thereto in yourselves, and to be held by you as trustees for the benefit of the stockholders participating in the transaction on the basis herein set forth, as follows:

"The beneficial interests of the trust properties above referred to shall be deemed to be represented by and divided into thirty thousand (30,000) units, and of which five thousand (5,000) units shall belong to you as compensation for services rendered in connection with this transaction and in bringing it about. The remaining twenty-five thousand (25,000) interest shall belong to the stockholders whose stock is to be transferred as aforesaid in proportion to their interests, that is to say, one unit for each share of stock. You shall issue to each of us a declaration of trust showing our respective interests in the property.

"It is contemplated that the above mentioned royalty interests will ultimately be transferred to a corporation with outstanding capital stock not exceeding thirty thousand (30,000) shares, and when so transferred stock is to be issued in

lieu of the beneficial interests above mentioned and in the same proportions. You are therefore hereby further authorized to take the necessary steps to vest the trust property in a corporation as above set forth, and in the event you deem it advisable to fix a part value of the stock of the corporation at a greater sum than one dollar per share, and thereby reduce the number of shares outstanding, you are authorized to do so, but always with the understanding that the stock shall be divided and issued upon the same pro rata basis as above set forth, and likewise, if it is deemed advisable that the stock of the corporation to take over the property shall be without par value, our stock interests shall be on the same basis.

''In the meantime, and so long as you hold the property in trust, you are authorized to manage and maintain the same, collect all proceeds, and distribute the same from time to time to the beneficiaries in proportion to their interests and you are authorized and empowered to do all things necessary and proper in the management and maintenance of the trust properties.''

Signal stockholders holding 25,000 shares signed this letter. McCollum was one of them. Harold Bayly held no Signal stock personally. The Signal stock belonging to Bayly Bros. was held for it by two allied corporations, and Harold Bayly signed the letter for these two corporations, no other agent joining him.

At the time of the proceedings above mentioned Harold Bayly was a director and president of Bayly Bros., but was not actively engaged in its affairs, having other business which engaged his principal attention, and he received no salary from it. Both of the plaintiffs were employees of the corporation, but were not then stockholders in it. Both of them knew about the foregoing matters and obtained the signatures of some Signal stockholders to the letter of December 15, 1932, above quoted. The office and office force of Bayly Bros. were used in carrying on the business of the committee above mentioned.

McCollum and Bayly acted under the authority given them in this letter. The exact date at which they exchanged the Signal stock for the royalties does not appear, but it was some time before February 2, 1933. They then proceeded to organize a corporation, National Oil Company, and transferred the royalties to it some time in March, 1933. For some reason not appearing here, it was authorized to issue only

20,000 shares of stock instead of the 30,000 shares contemplated by the letter of December 15, 1932. These 20,000 shares were originally all issued to McCollum and Bayly in one certificate, in accordance with a permit of the Corporation Commission authorizing them to be so issued in exchange for the royalties. They were then apportioned among the various interested parties in the same proportions specified in the letter just mentioned, and the certificates for the shares due the former Signal stockholders were sent to them with a letter dated March 18, 1933, and sent out on or about that date.

For the 5,000 royalty interests which were to belong to McCollum and Bayly under the letter of December 15, 1932, only 3333⅓ shares of stock in the newly formed corporation were issued. By agreement between McCollum and Bayly these shares were equally divided between them. Plaintiffs claim that the 1666 2/3 shares thus apportioned to Bayly in reality belong to the corporation for which they sue, and in this action they seek to recover them or their value for it. This claim is based on the contentions that Bayly, in negotiating the Signal settlement, was in reality acting for and on behalf of Bayly Bros. and that anything he obtained for doing so in reality belongs to the corporation, and further that as agent for the two corporations holding the Bayly Bros. Signal stock he could not lawfully execute the letter of December 15, 1932, because it undertook to transfer to him a part of their property, and that letter is therefore void as between him and Bayly Bros.

The nature of the action brought by plaintiff is of some importance in determining whether the statute of limitations has run. The complaint is labeled as one "for conversion," and its allegations stamp it as such. Plaintiffs do not contend that the action is not one for conversion. The prayer of the complaint suggests an action for the specific recovery of personal property, but since the period of limitation is the same for that as for an action for conversion (Code of Civ. Proc., § 338, subd. 3), we need not concern ourselves with any uncertainty in this respect. It does not purport to be an action in equity to declare and enforce a trust. It is an action in equity by reason of the fact that plaintiffs are suing as stockholders to enforce the rights of the corporation, under equitable rules (6A Cal. Jur. 805), but this does not affect the nature of the corporate right which is involved. (*Chetwood*

v. *California Nat. Bank*, (1896) 113 Cal. 414, 425 [45 Pac. 704].)

 It is plaintiffs' contention that the defendants committed no act of conversion before May 23, 1933. On that date 800 shares of National Oil Company stock were issued to the wife of defendant Harold Bayly and 800 shares to the mother of defendant Roy D. Bayly. These shares came directly from the original issue of 20,000 shares to McCollum and Harold Bayly. Later two certificates for 33 more shares each were issued to the same persons, from the same source. The complaint was filed on May 22, 1936; just one day within the period of limitation, if this contention is well founded.

But upon the facts of this case the conversion, if any, occurred at an earlier date. If Harold Bayly was guilty of a breach of duty to Bayly Bros. in taking from the Signal stockholders compensation for his efforts in their behalf, and if the compensation so received by him belongs to Bayly Bros., that compensation, when received, was not the oil stock which plaintiffs are now pursuing, but a share in the oil royalties which were given by the Signal management in exchange for the Signal stock. That compensation, when received, came to him under the letter of December 15, 1932, above quoted. That letter did not provide, as appellants' argument assumes, that the entire oil royalties received by McCollum and Bayly were to be held by them in trust for the Signal stockholders or for anyone. On the contrary, it divided the royalties into 30,000 units and segregated these units into two parts, to be held and dealt with separately, thus: "five thousand (5,000) units *shall belong to you* [McCollum and Bayly] as compensation for services rendered;" and "the remaining twenty-five thousand (25,000) interest shall belong to the stockholders . . . one unit for each share of stock. *You* shall issue *to each of us* [the stockholders] a declaration of trust showing *our* respective interests in the property." (Emphasis ours.) This clearly provides that when the royalty interests were received one-sixth thereof should at once become the property of McCollum and Bayly. The provision for formation of a corporation to hold "the beneficial interests above mentioned" does not at all affect this part of the agreement. It authorizes, and perhaps requires, McCollum and Bayly to transfer their own royalty interests to the corporation, if formed, and take stock therefor, but it does not impose any limitation on their ownership. The

provision that "so long as you hold the property in trust, you are authorized to manage and maintain the same" is limited to the property held in trust and the trust provided for covers only the interests of the Signal stockholders. If Bayly was required to turn over to Bayly Bros. any compensation acquired by him in this transaction, his taking and holding it under this letter of December 15, 1932, was plainly an act of dominion over it, and, if it was a subject of conversion, constituted a conversion, which occurred more than three years before suit was brought. Plaintiffs' action is therefore barred, if their action is properly one in conversion.

It may be questionable whether these oil royalties could be the subject of an action in conversion. Their exact nature does not appear, but they are obviously of some intangible nature and apparently personal property. Such an action lies for shares of stock in a corporation (*Payne* v. *Elliot*, (1880) 54 Cal. 339 [35 Am. Rep. 80]), but not for every species of intangible personal property (*Olschewski* v. *Hudson*, (1927) 87 Cal. App. 282 [262 Pac. 43]; *Adkins* v. *Model Laundry Co.*, (1928) 92 Cal. App. 575, 583 [268 Pac. 939]; *Vuich* v. *Smith*, (1934) 140 Cal. App. 453, 455 [35 P. (2d) 365].) But if not a conversion, the acts of defendants, in taking the royalties for themselves, on plaintiffs' theory of the rights of the corporation, constituted a breach of defendants' duty to it as officers and directors and amounted to a fraud, and the period of limitation for bringing an action for relief on that ground is fixed by subdivision 4 of section 338 of the Code of Civil Procedure at three years from the discovery of the fraud. (*Bainbridge* v. *Stoner*, (1940) 16 Cal. (2d) 423, 430 [106 P. (2d) 423].) Here no question of delayed discovery arises, for both plaintiffs, and, as far as appears, everyone else connected with Bayly Bros. knew of all defendants' acts at the time they were done.

If there were stockholders who had not such knowledge, the burden was on plaintiffs to allege and prove such fact. Moreover, a party having knowledge of facts which would reasonably put him on inquiry, where the inquiry, if pursued, would have led to a discovery of the fraud of which he complains, will be charged with having discovered that fraud as of the time he would have discovered it if he had with reasonable diligence pursued the inquiry when he should have done so (*Consolidated R. & P. Co.* v. *Scarborough*, (1932) 216 Cal. 698, 704 [16 P. (2d) 268]; *Nighbert* v. *First Nat. Bk. of*

*Bakersfield,* (1938) 26 Cal. App. (2d) 624, 635 [79 P. (2d) 1105]), and a motion for nonsuit is properly granted where the plaintiff fails to show that under this rule his discovery was within the period of limitation before his action was brought. (See *Haley* v. *Santa Fe Land Imp. Co.,* (1935) 5 Cal. App. (2d) 415, 425 [42 P. (2d) 1078].) Here there was no secrecy or concealment about the execution or contents of the agreement between the Signal stockholders and Bayly and McCollum, set forth in the letter of December 15, 1932, but, upon the contrary, a widespread knowledge thereof. Plaintiffs have not alleged or proved anything to show that the corporation for which they sue or any of its stockholders, was not chargeable with knowledge of the agreement more than three years before this action was brought.

██ Plaintiffs call attention to testimony that one of them discussed with Harold Bayly, before the letter of December 15, 1932, was signed, the provision therein that McCollum and Bayly were to have for themselves a share of the oil royalties, and objected to it, and that Bayly replied that Bayly Bros. was entitled to half of this ''bonus,'' and contend that by reason thereof Bayly received this stock as trustee for Bayly Bros. and there was no repudiation of the trust until the stock transfers of May 23, 1933, already mentioned. The plaintiff who had this conversation with Bayly was not then a stockholder of Bayly Bros., although a director and vice president, and while he was its employee it does not appear that he was acting or authorized to act for it in the matter, or that Bayly was talking to him as representing Bayly Bros. In other words, this conversation cannot be regarded as one addressed to the corporation, and can have no more effect than any statement of his intentions which Bayly might have addressed to any other person. It was insufficient to make Bayly a trustee of an express trust.

Plaintiffs also invoke the rule that an agent may not deal with himself, and contend that because Harold Bayly signed the letter of December 15, 1932, for the corporations holding Bayly Bros. stock, the agreement contained in that letter is void as to Bayly Bros. This contention, if upheld, could result only in decreeing to Bayly Bros. such portion of the ''bonus'' as was derived from its Signal stock, whereas plaintiffs' claim is for all of it. ██ But passing that point, it is not apparent why the matter referred to would affect or delay the running of the statute of limitations. Harold Bayly could

have been sued for his breach of duty as soon as he obtained the royalties.

█ If on any view of the case Harold Bayly held in trust for Bayly Bros. the royalty share which, according to the letter of December 15, 1932, was to ''belong'' to him, such trust was not an express trust, for the letter clearly excludes any intention to create any such trust, or a resulting trust, for the same reason, but was an involuntary or constructive trust. (Civil Code, §§ 2223, 2224; *Lezinsky* v. *Mason Malt W. D. Co.,* (1921) 185 Cal. 240, 251, 252 [196 Pac. 884] ; *Bainbridge* v. *Stoner, supra,* (1940) 16 Cal. (2d) 423, 429.) █ In case of such a trust where there is no concealment and the facts are known or should have been known to the claimant, the statute of limitations begins to run when the so-called trustee acquires the property in question in violation of his duty, no repudiation of the trust by the trustee being necessary for that purpose. (*Bainbridge* v. *Stoner, supra; Leviston* v. *Tonningsen,* (1931) 212 Cal. 656, 664 [299 Pac. 724] ; *Benoist* v. *Benoist,* (1918) 178 Cal. 234, 237 [172 Pac. 1109].)

█ If Harold Bayly thus committed a breach of trust, by appropriating to his own use the royalties he acquired, and thereby started the running of the statute, its running is not suspended by the fact that he later exchanged that property for stock and refused or failed to deliver the stock to the corporation. Plaintiffs cannot evade the bar of the statute by skipping lightly over the first breach of duty and claiming to found their action on some subsequent conduct in line with it. If this could be done the process could be repeated every time one who converted property exchanged it for something else, and thus the operation of the statute of limitations could be entirely defeated.

The judgment is affirmed.

Schauer, P. J., and Shinn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 27, 1942.