[No. H009771. Sixth Dist. Mar. 16, 1993.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v.
AD WAY SIGNS, INC., Defendant and Appellant.

188

## COUNSEL

Scott S. Furstman for Defendant and Appellant.

William M. McMillan, Joseph C. Easley and O.J. Solander for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—Ad Way Signs, Inc. (hereafter, Ad Way)[1] erected a billboard next to Highway 101 in Santa Clara County as specified in its permit, moved the billboard without a new permit, and returned it to the

---

[1] In the action in Santa Clara County Superior Court, Jim Hill, individually, and Jim Hill, doing business as Ad Way Signs, Inc., were defendants. Hill, the president of Ad Way, disclaimed any personal interest in the action and was dismissed as a party individually in the order of judgment.

original location when the California Department of Transportation (hereafter, Caltrans) either cancelled or threatened to cancel the original permit. Several years later, Caltrans again cited the billboard for being placed without a permit, and brought an action for declaratory relief. The trial court granted summary judgment to Caltrans, declared the billboard a public nuisance, and ordered its removal.

Ad Way raises numerous issues on appeal, among them the claim that the nine-foot movement, for safety reasons, was not a "placing"; that because Caltrans agreed either not to cancel the permit or to rescind the cancellation if the billboard was restored, Caltrans is estopped from asserting that the replacement of the sign was a "placing" in violation of statute; and that if there was a valid cancellation of its permit, Caltrans's action in cancelling the permit without giving Ad Way a hearing deprived it of its constitutional right to procedural due process.

FACTS

Caltrans issued permit No. 21502 to Ad Way on August 4, 1969. The permit authorized a sign 12 feet high with a 12- by 30-foot display area to be placed on the west side of Highway 101 at highway post mile 36.41L.[2] Appellant erected a billboard with those specifications.

It remained at that location until the summer of 1981 (since 1979 as a legal nonconforming use),[3] when appellant moved the billboard approximately nine feet onto land owned by the Santa Clara Valley Water District without the district's permission, and expanded the display area. The property from which the billboard came had become the site of an unauthorized dirt "go-cart" race track which came within two feet of a supporting pole of the billboard. Somebody had piled used tires against that pole as a safety measure, and the billboard had been vandalized on numerous occasions. Finally, in early 1981, someone attempted to burn it down.

As a result of the move, on December 2, 1981, respondent issued citation No. 11452, which announced: "You are hereby notified that the display

---

[2] In letters to appellant and in a declaration in support of the motion for summary judgment, Stan Lancaster, chief of the outdoor advertising branch of Caltrans, stated that the original permit authorized a sign 8 feet high and 12 by 32 feet in area at post mile 36.39L. However, the record contains a copy of the permit which authorized the height, size, and location stated in the text.

[3] In 1979, after litigation, Highway 101 retained its landscape classification. Advertising displays may not be erected adjacent to landscaped highways. (Bus. & Prof. Code, § 5440.) However, lawfully erected advertising displays that were in existence on November 6, 1978, may not be compelled to be removed without compensation. (Bus. & Prof. Code, § 5412.)

described is in violation of the Outdoor Advertising Act,[4] and may be removed and destroyed if action toward legalizing it is [not] taken prior to 1-5-82." Two boxes next to the preprinted violations were checked: "PERMIT NOT OBTAINED PRIOR TO INSTALLATION OF DISPLAY . . ." and "OTHER L/S—Display upgraded from 12×30×8 to 12×40×15 and a total rebuild of the structure from wood to metal. Please remove entire display."

Ad Way immediately requested its liaison with Caltrans, George Waldie, who at that time was executive director of the California Owned Outdoor Advertising Association,[5] to contact "Mr. [Stan] Lancaster [chief of Caltrans's outdoor advertising branch] and advise him that we intended to do whatever was necessary to correct the problem and preserve Permit No. 21502." Waldie contacted Lancaster, who responded on August 3, 1982, with a letter to Ad Way informing it that a new permit for the nonconforming location could not be issued. The letter stated: "Under the provisions of the Outdoor Advertising Act and the California Administrative Code [now, California Code of Regulations][6] Title 4, Chapter 6, customary maintenance[7] is allowed in maintaining a sign as well as replacing a downed or damaged structure provided the replacement cost does not exceed 50% of the appraised value of the sign in its' [sic] preexisting state. However, this office must be notified of your plans and be provided a reasonable time schedule for the completion of the job."

The letter warned: "So, unless we hear from you within 30 days we will have to cancel the permit and remove it from our compensable sign list."

---

[4]The Outdoor Advertising Act is contained in Business and Professions Code section 5200 et seq. Further statutory references are to that code unless otherwise stated.

[5]Waldie was a Caltrans billboard inspector from 1959 to 1969, and again from September 1988 to March 1990, when he became an industry consultant.

[6]Further references to "Regulation" are to the California Code of Regulations.

[7]Regulation section 2270, "Customary Maintenance," declares: " 'Customary maintenance' means any activity performed on an advertising display for the purpose of actively maintaining the display in its existing approved physical configuration and size dimensions at the specific location approved on the application for State Outdoor Advertising Permit, or at the specific location officially recorded in the records of the Department for a legally placed display, for the duration of its normal life.

"(a) Customary maintenance includes the following activities:

"(1) The changing of advertising message, including temporary alteration of the outside dimensions of a display in the form of add-ons or cut-outs as incident to a change in copy.

"(2) The routine replacement of border and trim.

"(b) Customary maintenance does not include the following (all of which acts shall be considered as a 'placing' of a new advertising display):

"(1) Raising the height of the display from ground level.

"(2) Relocation of all or any portion of a display.

"(3) Adding a back-up panel to a single panel display.

"(4) Increasing any dimension of any panel facing except as permitted by Section 2270.

"(5) Turning the facing direction of a single facing display."

Hill contacted Lancaster on August 16 and received an extension of time. However, it was not until October 1982 that Lancaster, after meeting with Hill and Waldie at the site, agreed to allow appellant to return the display to its original location and configuration.[8]

According to Waldie, it was the uniform practice for Caltrans to allow any cited deficiencies to be corrected and upon correction to take no further action. "Such an agreement was common and normal for Caltrans to enter into."

This agreement is well within the discretion of the department. The chief engineer has the authority to review a determination that a billboard is in violation of the Outdoor Advertising Act. (Reg., § 2519.) In addition, "Advertising displays that have been destroyed or fallen as the result of criminal or tortious acts [appellant's asserted justification for moving the billboard in the first place] may be repaired or reconstructed in kind" in accordance with time limits set by Caltrans. (Reg., § 2272.)

Ad Way restored the billboard by the second week of November 1982.

However, about a year and a half later, on May 25, 1984, Lancaster sent appellant a letter recalling that "we had agreed to allow you to return the display to its original location and configuration some time ago." Lancaster then complained that "[t]he display was returned to its original location but has never been returned to the original size or height. It is now 12'×40', 14' above the ground while its original approved size is 12'×32', 8' above ground. . . ." The letter concludes with an offer to discuss any questions, but restricts the "negotiable subjects" to "the times of compliance."

Hill responded by contacting Lancaster and telling him that "Permit No. 21502 covered a 12 × 30 display, 12 fee [*sic*] above the ground and that the display on the site was 12 × 30, 12 feet with temporary 'add-ons' [(temporary alteration of the outside dimensions of a display incident to a change of copy (Reg., § 2270, subd. (a)(1))] that I felt were permitted by the Regulations."

---

[8]Caltrans obliquely disputed this point in the action below but concedes it for purposes of appeal. However, Caltrans adds that "Caltrans believed that Ad Way did not comply with the agreement, so it never reinstated permit No. 21502." If, as Caltrans claims, it in fact revoked the permit, its authority to "reinstate" a permit which it could not otherwise issue may be questionable. (See *People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 812 [114 Cal.Rptr. 499].)

However, over five years later Hill received citation No. 21358 which "superceded" a citation No. 11292.[9] Citation No. 21358 charged that a permit was not obtained prior to the installation of a display in violation of sections 5230 to 5366, and that the display was primarily to be viewed from a landscaped freeway in violation of section 5440. Although Hill disputed Lancaster's claim that the billboard exceeded the permitted height limit, he claimed to have discontinued the use of add-ons.

In the superior court, Hill claimed that the sign height had remained the same since 1982, and that the board then "in place at post mile 36.47 [sic] is exactly in the configuration identified in Permit No. 21502, has no add-ons, is in accordance with Ad Way's 1982 agreement with Mr. Lancaster and has attached to it the requisite identification plate."

Nevertheless, on February 7, 1991, Caltrans filed suit for declaratory relief alleging that the billboard was placed and maintained in violation of the requirement that a permit be secured before a billboard is erected. (§ 5350.)

In support of its motion for summary judgment, Caltrans declared that permit No. 21502 was cancelled on October 8, 1982, and that appellant's restored display was a "new and unpermitted display."

The trial court granted respondent's motion for summary judgment, declaring that the outdoor advertising display was "unlawfully placed and is being unlawfully maintained without a permit from plaintiff . . . ."

The evidentiary basis cited by the court consisted of Lancaster's statement that a permit was not issued for the display and that there was no identification number plate furnished by Caltrans on the display. In addition, the court relied on appellant's responses to request for admissions No. 6 and interrogatory No. 32.

Appellant answered "admit" to the request for admission "[t]hat sometime in December of 1981, ADWAY SIGNS INC. or JIM HILL removed or caused removal of the display permitted by State Permit No. 21502; thereafter, State Permit No. 21502 was cancelled by plaintiff."

_____

[9]In contrast to citation No. 21358, neither a copy of citation No. 11292 nor a declaration from the Caltrans agent who issued the citation appears in the record. Caltrans's complaint, however, alleges that Caltrans notified appellant that the billboard was placed without a permit and placed adjacent to a landscaped freeway by mailing a copy of citation No. 11292. Appellant denied that allegation in its answer to the complaint and in Hill's declaration in opposition to the motion for summary judgment.

Interrogatory No. 32 commanded appellant to state how the display that was in place at the time the interrogatory was propounded on June 11, 1991, related to a photograph of the billboard which was the subject of the September 26, 1989, citation No. 21358. The photographed billboard had five supporting poles and a panel larger than the billboard frame which was attached to the display area of the billboard.

Appellant described the display that was in place on June 11, 1991, as having 4 poles, being 12 feet high, and having 12- by 30-foot panels. Comparing the two, his answer No. 32, read: "Same sign with 'add ons' deleted and one supporting pole removed."

The trial court's recitation of the evidence continued: "[Appellant] offered no evidence in opposition to this fact [the lack of a permit] except to contend that 'it did or should have had, a permit to erected [*sic*] and maintain the subject billboard,' based on an oral agreement with plaintiff. However, for reasons stated in the 'Order on Motion for Summary Judgment' dated December 3, 1991, the oral agreement provides no such basis."

The order on motion for summary judgment[10] stated: "The evidence shows that Ad Way has no current permit for the subject sign. [Business and Professions] Code section 5360 requires renewal of permits on January 1 of each year. Even if it is assumed that the State had not complied with the alleged oral agreement of the parties with respect to permit no. 21502, Ad Way would necessarily have known that the permit had not been reinstated or renewed by January 1, 1983. Further, Ad Way admitted at oral argument that it had not applied and paid fees for a permit for the subject sign since the alleged oral agreement between the parties. Therefore, Ad Way cannot claim that the State is estopped from claiming after January 1, 1983 that Ad Way had no permit."

This appeal ensued.

### CONTENTIONS ON APPEAL

Appellant claims that the motion for summary judgment should not have been granted because material triable issues of fact exist, namely, that the nine-foot movement was for necessary maintenance and repairs and did not constitute a "new placing" and that the permit was never properly cancelled. In connection with the first point, appellant claims that the restrictive

---

[10]This court on its own motion ordered the record augmented with that order. (Cal. Rules of Court, rule 12.)

definition of "customary maintenance" promulgated by Caltrans is contrary to clear legislative intent.[11]

## SCOPE OF REVIEW

"The purposes and standards for summary judgment are well established. ■ 'The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. [Citations.]' [Citation.] The trial judge determines whether triable issues exist by examining the affidavits and evidence before him, including any reasonable inferences which may be drawn from the facts before him. [Citation.] While '. . . the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed . . . [citation], . . . a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist.' [Citation.]" (*Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1142 [271 Cal.Rptr. 246].)

"The function of the trial court is 'issue finding,' not 'issue determination' [citations] . . . ." (*Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 567 [122 Cal.Rptr. 119].)

## THE NINE-FOOT DISPLACEMENT

■ Appellant's claim that the nine-foot displacement did not constitute a new placing has been decided by the recent case of *People* ex rel. *Dept. of Transportation* v. *Ad Way, Inc.* (hereafter, *Ad Way*) (1992) 8 Cal.App.4th 309, 315 [11 Cal.Rptr.2d 407]. That court stated: "The plain meaning of California Code of Regulations, title 4, section 2270 is that *any* relocation of a billboard, regardless of the reasons therefor, is not considered customary maintenance and is a 'placing.' Equally clear is the language of section 5350 which provides that before such placing of a billboard occurs, a permit from respondent must be obtained. Neither statute suggests that relocation of a billboard for safety reasons, to otherwise comply with the Act, or for any other reason creates an exception to the permit requirement." (*Ibid.*)

---

[11]Appellant raises additional issues that we need not discuss in light of this decision. Appellant contends that respondent is estopped from claiming that appellant returned its billboard to the original location in violation of the statutory requirement for a permit because Lancaster entered into an enforceable agreement with appellant pursuant to his duties as chief of the highway outdoor advertising program.

Appellant also asserts that its right to procedural due process was violated by Caltrans's revocation of appellant's outdoor advertising permit without a prior or subsequent administrative hearing and that fundamental due process requires that appellant be given an opportunity to be heard before the state deprives it of its property right.

We are satisfied that *Ad Way* also disposes of appellant's contention that Regulation section 2270 defining "customary maintenance" is contrary to clear legislative intent.

In addition, section 5225, in defining the verb "to place," includes "the erecting" of a billboard. At least since 1974, with the decision in *People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.*, *supra*, 39 Cal.App.3d at pages 807-813, the erecting of a billboard, even a short distance from its original location, and even at the behest of the Department of Public Works, was considered a placing which required a permit.

Such an interpretation of the statute is consistent with the stated legislative purposes of the Outdoor Advertising Act, namely, to establish minimum standards with respect to the regulation of advertising displays adjacent to highways included in the federal system (§ 5228), to "promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering on such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively, recognizing that a reasonable freedom to advertise is necessary to attain such objectives. . . ." (§ 5226.)

Consequently, the declaration of Regulation section 2270, subdivision (b), that "(2) Relocation of all or any portion of a display" is not customary maintenance, results in no frustration of legislative intent.

### CANCELLATION OF THE PERMIT

However, as to the issue whether the permit was cancelled,[12] we agree with appellant that there is a triable issue of fact.

The trial court found Caltrans's evidence dispositive of the issue based mainly on Ad Way's failure to renew the permit in 1983 or thereafter. The

---

[12]Caltrans and the trial court used the word "cancelled" rather than "revoked." "Cancelled" does not appear in the Outdoor Advertising Act. In daily parlance, "cancelled" is defined as "to make void; revoke; annul: *to cancel a reservation*." (The Random House Dict. of the English Language (2d ed. Unabridged, 1987) p. 304, original italics.) A statutory definition of "cancellation" appears in the Vehicle Code. Vehicle Code section 13100 defines cancellation of a driver's license as voluntary termination of the driving privilege entailing no penalty and allowing immediate reapplication for a new license. Revocation is defined in the same code as involuntary termination of the driver's license and is a penalty imposed upon a driver who commits wrongful acts. (*Hamilton* v. *Dick* (1967) 254 Cal.App.2d 123 [61 Cal.Rptr. 894].) Since the Outdoor Advertising Act does not provide for "cancellation," we equate Caltrans's claim of "cancellation" with "revocation."

court apparently equated expiration of a permit with revocation of that permit.

We disagree. The regulatory scheme of the Outdoor Advertising Act requires persons in the business of outdoor advertising to acquire a license and annually renew it. (§ 5301.) The license entitles the holder to apply for permits to place or maintain individual billboards during the term of the license. (§ 5350.) Caltrans must grant a permit if the application is in full compliance with the Outdoor Advertising Act, if the display will not be in violation of any other state law, and if the fee is paid. (§ 5358.) Each permit must be renewed annually. (§ 5360.)

Failure to renew a permit can result in civil or criminal sanctions. In addition to monetary penalties provided in the statute setting forth the permit fee (§ 5485), the act provides that the director may revoke a license or permit for failure to comply with its provisions (§ 5463; Reg., § 2266) and that the director may enforce the penalties (§ 5254), which include the removal of advertising displays which are public nuisances because they are in violation of the act (§§ 5461, 5463; and see Pen. Code, § 556.3). The act also provides that violation of its provisions is a misdemeanor. (§ 5464.)

Initial permit and renewal fees, and the penalties for nonrenewal, appear in the same statute. (In addition, the warning that a "penalty fee must be assessed" for failure to renew a license or permit is printed on the department's citation form.) The statute provides: "The permit fee for an advertising structure for the original permit and for each annual renewal thereof is twenty dollars ($20), *except where the applicant has placed or maintained the structure without a valid, unrevoked, and unexpired permit therefor, the fee for any issuance of the first permit thereafter is ninety-five dollars ($95), seventy-five ($75) of which is the penalty*." (§ 5485, subd. (b), italics added.) A new application for renewal of an expired permit is not required by statute.

In addition, automatic revocation of the permit for nonpayment of a renewal fee is not provided by statute. Our Supreme Court has held "that unless the statute expressly provides to the contrary a license cannot be revoked without a hearing where the statute contemplates a quasi judicial [*sic*] determination by the administrative agency that there be cause for the revocation; that because of reasons of justice and policy the statute will be

interpreted to require a hearing. [Citations.]" (*Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 271 [246 P.2d 656].) Furthermore, "[a]n administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].)

█ █ Notice and an opportunity to be heard are required for owners of permanent displays. Section 5463 provides: "The director *may* revoke any license or permit for the failure to comply with the provisions of this chapter and *may* remove and destroy any advertising display placed or maintained in violation of this chapter after 10 days' written notice posted on such structure or sign and a copy forwarded by mail to the display owner at his last known address. . . ." (Italics added.) Compare this with the provision as to temporary displays: "the director . . . *may summarily and without notice* remove and destroy any advertising display placed in violation of this chapter . . . ." (§ 5463, italics added.) In addition, a permit holder may make a written request for review of a determination of violation. (Reg., § 2519.)

Neither the statutes nor the regulations indicate the circumstances in which one or the other of the sanctions, or criminal prosecution, will be chosen. The choice appears to be a matter of discretion with the department. However, an administrative agency may not exercise its discretion in an arbitrary, capricious, or patently abusive fashion. (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966 [103 Cal.Rptr. 455].)

The record does not contain evidence showing how Caltrans actually enforces the act. However, since the civil sanctions range from a fairly minimal fine to revocation of the permit, and since the latter is a significantly greater sanction than the former considering the value of the advertising display which must be removed and the loss of income from it, there must be some connection between the egregiousness of the violation and the penalty exacted.

Indeed, the act and its regulations recognize the property rights of billboard owners in the provision for notice to owners whose billboards will be removed (§ 5463), in the provision for administrative review of a determination of violation (Reg., § 2519), and in the provisions for payment of compensation or establishment of amortization periods for lawfully erected advertising displays which must be removed because of the provisions of the act (§ 5412 et seq.).

For these reasons, we conclude that automatic revocation of an expired permit is not permitted. Therefore, a permit holder could have a valid, unrevoked, expired permit. Consequently, the trial court's reliance on the fact that the permit was not renewed is not determinative whether the permit was in fact revoked.

The trial court relied on a second major evidentiary factor, appellant's "admissions."

■ "The admissions of a party receive an unusual deference in summary judgment proceedings. An admission is binding unless there is a credible explanation for the inconsistent positions taken by a party. [Citations.]" (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 396 [282 Cal.Rptr. 508].) "[W]hen such an admission [against interest] becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ Appellant's admission that "thereafter, [the permit] was cancelled by plaintiff," was elicited by an improper compound request.[13] The first clause of the request of admission pertained to matters within appellant's personal knowledge, namely, whether Ad Way moved the display in December 1981. The second clause, however, asked appellant to admit the legal effect of action Caltrans claims to have taken at some unspecified date and time in regard to the permit. Specifically, Caltrans presented appellant with the statement, "thereafter, State Permit No. 21502 was cancelled by plaintiff."

At least one court has refused to interpret the *D'Amico* decision "as saying that admissions should be shielded from careful examination in light of the entire record. A summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence." (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735].)

In the instant action, the record shows that whether the permit was revoked is in serious dispute.

---

[13]"Each request for admission shall be full and complete in and of itself. . . . No request for admission shall contain subparts, or a compound, conjunctive, or disjunctive request unless it has been approved under Section 2033.5 [pertaining to form interrogatories and requests for admission approved by the Judicial Council]." (Code Civ. Proc., § 2033, subd. (c)(5).)

There is credible evidence on both sides of the issue. To support its claim, Caltrans declares that it gave notice to appellant at some unspecified time via citation No. 11292. However, it presents no evidence of any action taken specifically in reliance on that citation. From the pleadings, it appears that citation No. 11292 provided the notice for the "cancellation" which Caltrans declares took place on October 8, 1982. The evidentiary support for the "cancellation," in addition to appellant's admission, is Lancaster's declaration.

On the other hand, there is considerable evidence supporting the fact that there was no revocation. In August 1982, Lancaster wrote Ad Way warning it that a new permit to place a billboard on a landscaped highway could not be granted and suggested that the billboard could be replaced if certain requirements were met. Hill and Waldie both stated that there was an agreement to do so subsequent to October 8, 1982 (and Hill stated he had no knowledge of citation No. 11292). The fact that there was an agreement was corroborated by Lancaster's May 15, 1984, letter which implies that revocation had not taken place since Lancaster spoke of times of compliance for curing violations.

The substance of the agreement between Caltrans and Ad Way is unclear. Lancaster's letter speaks of allowing Ad Way to replace the billboard. Waldie suggests Caltrans's agreement to cure the violation meant that no further action on the citation would be taken and the citation would be cancelled. Hill speaks of the citation being rescinded and the permit reinstated.

Hill further stated that five years passed between Lancaster's letter and the issuance of citation No. 21358 on September 26, 1989. There is a rebuttable presumption "that an advertising display is lawfully erected if it has been in existence for a period of five years or longer without the owner having received written notice . . . that the display was not lawfully erected." (§ 5216.1.)

Consequently, although the "admission" constitutes evidence of revocation, it is not dispositive. Since the function of the court on a motion for summary judgment is issue finding, not issue determination, we conclude that the court abused its discretion in determining that there were no triable issues of fact.

## DISPOSITION

The judgment is reversed. Costs on appeal to appellant.

Elia, J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied April 6, 1993, and respondent's petition for review by the Supreme Court was denied June 24, 1993. Mosk, J., was of the opinion that the petition should be granted.