[No. A087456. First Dist., Div. Four. Mar. 20, 2001.]

RICHARD TRAVERSO, Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

## COUNSEL

Terry J. Traktman and Joseph A. Forest for Plaintiff and Appellant.

William M. McMillan, Richard W. Bower, Brelend C. Gowan and O. J. Solander for Defendant and Respondent.

## OPINION

**KAY, J.**—Richard Traverso doing business as Adco Outdoor Advertising appeals from an order dismissing his first amended petition for writ of mandate and complaint for damages (the complaint) against the California Department of Transportation (Caltrans) after Caltrans's demurrer was sustained without leave to amend. This suit unsuccessfully attempts to revive permits for billboards which were canceled over a quarter-century ago. The dismissal is affirmed.

## I. BACKGROUND

The permits in question are for four billboards along U.S. Highway 101 in San Mateo County. The prior owners of the billboards are described as Traverso's "predecessor[s] in interest"; he is apparently the assignee of their rights in the billboards and the permits for them. One of the permits was issued in the 1930's, two in the 1950's, and one in 1972. The complaint states that the permits were canceled by Caltrans in 1973-1975. During that period the billboards were evidently taken down or converted to less lucrative "on-site" advertising, which does not require a permit from Caltrans under the Outdoor Advertising Act (hereafter the Act; Bus. & Prof. Code, § 5200 et seq.) and is limited to advertising of business conducted on the property where the billboard is placed (Bus. & Prof. Code, § 5272, subds. (c) & (d)).[1]

The complaint alleges that the permits for the billboards were unlawfully canceled without notice by Caltrans, and that Caltrans "failed to provide the permittee with any review or appeal procedure regarding said permit cancellation, and failed to provide any compensation." The complaint indicates that Traverso requested a renewal of one of the permits by letter dated November 26, 1997, which tendered a $20 renewal fee and offered to pay any "penalty fees," but that Caltrans did not respond to the request. As to the other three permits, the complaint alleges that Caltrans "does not acknowledge that administrative remedies are or were available for the relief being sought and thus, any attempt by [Traverso] to exhaust administrative remedies would be futile." The complaint seeks to compel Caltrans by writ of mandate to reissue or renew the permits or, alternatively, to recover damages on an inverse condemnation theory for loss of the permits and the revenue they could have generated.

Caltrans's demurrer was sustained without leave to amend on the grounds that the causes of action were barred by statutes of limitation, and by section 5360, subdivision (b), which provides that "Any permit that was not renewed after January 1, 1993, is deemed revoked."

## II. DISCUSSION

A demurrer tests issues of law raised by a pleading (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 899, p. 357), and is properly sustained without leave to amend as to a complaint "where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law,

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

no liability exists" (*id.* at § 946, p. 403). Since there is no viable cause of action in this instance, the court correctly sustained the demurrer without leave to amend and dismissed the case.

■ It is undisputed that all statutes of limitation have expired on any challenges to revocations of the permits in question in the 1970's.[2] For purposes of the statutes of limitation Traverso is in no better position than the assignors of his permits. (See *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1216 [52 Cal.Rptr.2d 518] [statutes of limitations as to property claims "do[] not commence to run anew every time the ownership of the property changes hands"].) Traverso relies on cases decided long after challenges to revocation of the permits were time-barred; those decisions did not "reincarnate dead causes which had fallen to the sword of the statute [of limitations]." (*Monroe v. Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 406-407 [99 Cal.Rptr. 129, 491 P.2d 1105].) "[T]he rule of law established by the new decision governs events occurring prior to the date of decision, *when such events are at issue in timely filed actions.*" (*Id.* at p. 407.)

Nevertheless, Traverso asserts that this case "is not based directly" on the allegedly "unlawful cancellations" of the permits in the 1970's (see *People ex rel. Dept. of Transportation v. Ad Way Signs, Inc.* (1993) 14 Cal.App.4th 187, 197 [17 Cal.Rptr.2d 496] ["revocation" is the same as "cancellation" of a billboard permit]), but rather on Caltrans's "current refusal to renew [the] permits in 1997." Traverso explains that he is only seeking to compel Caltrans to accede to his 1997 demand to renew the permits, and that he is not suing for damages dating back to the permit revocations, "but only those commencing with the failure to renew." He reasons that his causes of action as so described did not accrue until 1997, and thus that they were timely filed.

No matter how Traverso tries to slice it, however, this case involves setting aside permit revocations that occurred over 25 years ago. We presume that the billboards Traverso seeks to resurrect for off-premises advertising or convert to that use could not have been lawfully placed for that

---

[2]Various statutes of limitation have been cited for the claims Traverso may be taken to assert: four years for illegal revocations of the permits (Code Civ. Proc., § 343); four years for mandate actions generally (*ibid.*); three years for wrongful failure to renew the permits (Code Civ. Proc., § 338, subd. (a)); five years for the inverse condemnation count (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 556, p. 710). In view of other conclusions reached herein, we need not determine precisely which of these deadlines would be applicable.

purpose for the first time in 1997.[3] Were it otherwise, Traverso could simply have applied for new permits for the billboards, rather than filing this lawsuit for renewal or "reissuance" of the original permits. It is also apparently conceded that there would be no claim to renewal or reissuance of the original permits if those permits had been lawfully revoked. Otherwise, there would have been no reason for Traverso to allege that the revocations were unlawful. Thus, while Traverso attempts to frame the issue in terms of Caltrans's alleged duty to renew or reissue the permits in 1997, he must overturn the original permit revocations.

To "revoke" or "cancel" as commonly understood means to annul, terminate, or destroy (see *People ex rel. Dept. of Transportation v. Ad Way Signs, Inc., supra,* 14 Cal.App.4th at p. 197, fn. 12; *People v. Demperio* (1995) 86 N.Y.2d 549 [634 N.Y.S.2d 672, 658 N.E.2d 718, 719]; *Teeter v. Allstate Insurance Company* (1959) 9 A.D.2d 176 [192 N.Y.S.2d 610, 616]), and there is no basis for attributing any different meaning to the revocation of a billboard permit. When the permits here were revoked they were extinguished, and when the deadlines for challenging the revocations expired they were extinguished conclusively. From that point they were no longer capable of "renewal." (See *Winokur v. Michigan State Board of Dentistry* (1962) 366 Mich. 261 [114 N.W.2d 233, 235] ["The word 'revoke' imports finality"]; *Flamingo, Inc. v. Nebraska Liquor Control Com'n.* (1969) 185 Neb. 22 [173 N.W.2d 369, 371] [" 'revocation' implies a permanent termination," not an "expectation . . . of resumption"]; *Carter v. Brooklyn Life Ins. Co.* (1888) 110 N.Y. 15 [17 N.E. 396, 399] [to "renew" means "to refresh, revive, or rehabilitate an expiring or declining subject; but is not appropriate to describe . . . the creation of a new existence"].) Once a permit is conclusively extinguished it is also misleading to refer to a "*re*issuance" of the permit; from that point there could only be a *new* issuance. (Cf. *People ex rel. Dept. of Transportation v. Ad Way Signs, Inc., supra,* 14 Cal.App.4th at p. 197, fn. 12 [reapplication for new license is required after old one is revoked]; § 5485, subd. (b) [establishing fee for "any *issuance* of the first permit" after a billboard has been placed or maintained "without a valid, unrevoked, and unexpired permit" (italics added)].)

Since the time for challenging the revocations here has passed, Traverso is in the position of any new applicant as to the permits in question. In that posture, as has been observed, he is not entitled to the permits. Accordingly, we hold that he has no cause of action for denial of the permits.

---

[3]When California enacted stricter standards for billboards in response to amendment of the federal Highway Beautification Act in the 1960's, grandfathering provisions allowed the perpetuation of certain billboards which became nonconforming under the new law. (See *Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1157-1158 [26 Cal.Rptr.2d 217, 864 P.2d 488].) The billboards here are evidently in that category.

Traverso advances essentially two arguments to avoid this result. First, he contends that because the permits were revoked without due process, the revocations were a nullity and in effect never occurred. Thus, the permits were at worst expired, not revoked, and he submits that even long-expired permits are capable of renewal. He maintains that section 5360, subdivision (b), which provides that permits not renewed after January 1, 1993, are deemed revoked, cannot be applied here because that law did not take effect until after this case was filed. Thus, Caltrans breached an ongoing duty to renew the permits. Alternatively, Traverso urges that even if the permits were effectively revoked, he has a cause of action for their "reinstatement." These theories are untenable.

The first line of argument is predicated on the holding of *Traverso v. People ex rel. Dept. of Transportation, supra,* 6 Cal.4th at page 1162, that billboard permits are property interests protected by due process, and thus that notice and an opportunity to be heard must be afforded before they are revoked. A due process violation is established for purposes of the demurrer herein by the complaint's allegations that no such notice and hearing opportunity were provided before the permits in question were canceled. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] [demurrer admits properly pled material facts].) As previously noted, however, the 1993 decision in *Traverso v. People ex rel. Dept. of Transportation* did not revive any expired claims Traverso or his predecessors may have had with respect to the revocations at issue. Moreover, claims such as those here which would require Caltrans to prove what process it provided in connection with 25-year-old permit revocations illustrate one of the important reasons for statutes of limitation. Such statutes "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755].)

To circumvent the statute of limitation problem, Traverso takes the position that "the permits were never *actually* terminated, since without provision of due process no effective cancellation was possible." Thus, while Traverso's complaint avers that the permits were revoked, his briefs assert that "*no revocation has occurred.*" This assertion is based primarily on the following passage in *City of San Marino v. Roman Catholic Archbishop* (1960) 180 Cal.App.2d 657, 669 [4 Cal.Rptr. 547]: " 'In revoking a permit lawfully granted, due process requires that [the regulatory authority] act *only upon notice to the permittee, upon a hearing, and upon evidence substantially supporting a finding of revocation.*' . . . 'The resolution or revocation . . . adopted without notice or hearing or reception of competent evidence, *was*

*inoperative and of no legal force.'* " Traverso also cites without discussion *Aylward v. State Board etc. Examiners* (1948) 31 Cal.2d 833, 838-839 [192 P.2d 929]; and *B. W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 233-234 [215 Cal.Rptr. 130].

The principal problem with this cursory legal argument is that none of these cases involved a statute of limitations issue. The cases were mandate actions which overturned "void" revocations of building permits or professional licenses. (*Aylward v. State Board etc. Examiners, supra,* 31 Cal.2d at p. 839 [revocation premised on erroneous conclusion of law]; *B. W. v. Board of Medical Quality Assurance, supra,* 169 Cal.App.3d at p. 234 [revocation on improper evidence]; *City of San Marino v. Roman Catholic Archbishop, supra,* 180 Cal.App.2d at p. 669 [revocation without due process].) It appears that the mandate petitions in all of these cases were timely filed; no question of timeliness was raised in the opinions. Thus, while the *San Marino* case, in affirming a judgment which ordered reinstatement of a revoked permit, went so far as to observe that "[t]echnically, no reinstatement [was] required" because the permit "was never properly revoked [and was] still in effect," neither that case nor the *Aylward* or *B. W.* cases constitute authority for the proposition that improperly revoked permits remain effective indefinitely. These cases confirm only that "[m]andate will lie to compel [a regulatory authority] to nullify or rescind [its] void acts." (*B. W. v. Board of Medical Quality Assurance, supra,* 169 Cal.App.3d at p. 234, citing *Aylward.*)

A precedent that addresses a statute of limitations question and is on point here is *Miller v. Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371 [238 Cal.Rptr. 915]. The plaintiff in *Miller* filed a mandate petition to review an order reinstating his professional license. He argued that conditions imposed on his reinstatement were unlawful because his license had been revoked without due process. The court held that he could not challenge the license revocation because the statute of limitations had expired on any mandate petition for that purpose. That holding applies directly to the case at bench, where Traverso advances a due process challenge to permit revocations, in the context of claims for "reissuance" or "reinstatement" of the permits, when the time for challenging the revocations has long since passed. As the *Miller* court explained: "To allow a litigant to attack ancient administrative determinations on the ground they constitute a necessary foundation for current administrative action would emasculate the purposes of the statute of limitations and would inject unacceptable uncertainty into the process of administrative decisionmaking." (*Id.* at pp. 1376-1377.) That the ancient wrong was a deprivation of due process does not open the door to an untimely action. "[I]t is well settled that the assertion of a constitutional right is subject to a reasonable statute of limitations unless a constitutional provision provides to the contrary. [Citations.] Here, no constitutional provision bars application of the statute, and Miller has made no claim

the limitation period is unreasonable. Miller's assertion of a constitutional claim does not avoid the bar of the statute of limitations." (*Id.* at p. 1377.)

The *Miller* court also made the pertinent observation that there had been an "opportunity to challenge the prior administrative order of revocation," but that the plaintiff had failed to exhaust that remedy. (*Miller v. Board of Medical Quality Assurance, supra,* 193 Cal.App.3d at p. 1378.) Likewise here, there is no suggestion that Traverso's assignors were powerless to raise the due process argument he now belatedly asserts. Again, the fundamental policies supporting statutes of limitation dictate rejection of Traverso's untimely objections to the revocations of his predecessors' permits. Statutes of limitation "require plaintiffs to diligently pursue their claims" (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923]), and are "intended to run against those who are neglectful of their rights." (*Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 228-229 [153 P.2d 325].) "[I]f a man neglects to enforce his rights, he cannot complain if, after a while, the law follows his example." (Holmes, *The Path of the Law* (1897) 10 Harv. L.Rev. 457, 476.)

*Miller* acknowledges that acts in excess of any agency's fundamental jurisdiction "may be collaterally attacked at any time without regard to a statute of limitations." (*Miller v. Board of Medical Quality Assurance, supra,* 193 Cal.App.3d at p. 1379.) However, more is required for such an attack than an alleged constitutional violation on the part of the agency. (*Ibid.*) It must appear that there was "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715] [defining "[l]ack of jurisdiction in its most fundamental or strict sense"].) Caltrans unquestionably has the power to revoke billboard permits (§ 5463; see generally *Traverso v. People ex rel. Dept. of Transportation, supra,* 6 Cal.4th at pp. 1161-1162 [abatement under the Act is valid exercise of state's police power]), and Traverso raises no issue of personal or subject matter jurisdiction with respect to the revocations in question. Accordingly, this lawsuit does not constitute a collateral attack on the revocations which would be excepted from the statutes of limitation. (See *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 501 [81 Cal.Rptr.2d 639] [collateral attack only contests lack of fundamental jurisdiction].)

We therefore conclude that the first part of Traverso's argument for an ongoing duty to renew his assignors' permits—the claim that permits were never revoked—is insupportable. The permits were revoked as a matter of fact as alleged in the complaint, and they were revoked as a matter of law

when the time for contesting the revocations passed. This conclusion obviates extended discussion of Traverso's main contentions: that he holds "valid, *unrevoked,* expired" permits under the reasoning of *People ex rel. Dept. of Transportation v. Ad Way Signs, Inc., supra,* 14 Cal.App.4th at page 200 (italics added); and that section 5360, subdivision (b), cannot be constitutionally applied to revoke his merely expired permits. The *Ad Way* case is inapposite, and there is no need to reach the constitutional issue.

In the *Ad Way* case it was a disputed issue of fact whether a billboard permit had been revoked. (*People ex rel. Dept. of Transportation v. Ad Way Signs, Inc., supra,* 14 Cal.App.4th at p. 197.) Caltrans maintained that it had canceled the permit, but there was evidence to the contrary. (*Id.* at p. 201.) In that context, the court had occasion to conclude that a billboard permit is not automatically revoked upon its expiration,[4] and thus that "a permit holder could have a valid, unrevoked, expired permit." (14 Cal.App.4th at p. 200.) That holding has no application here, where the permits have not merely expired and have long ago been revoked entirely apart from their expiration.

Section 5360, subdivision (b)'s pronouncement deeming any permit not renewed after January 1, 1993, to be revoked is also irrelevant. Traverso filed this case and a number of others at the end of 1997 based on the belief that this provision, which took effect on January 1, 1998 (Stats. 1997, ch. 152, § 4), cannot be "retroactively" applied consistent with due process in any case filed before its effective date which sought the renewal of expired permits.[5] Again, however, the permits in this case were conclusively revoked long before 1993. Since failure to renew the permits from 1993 to 1997 is not the only basis for deeming them to be revoked, we are not called upon to address Traverso's theory about the operation of the new statute.

Traverso's alternative argument is that he has a right to "reinstatement" of the permits even if they were effectively revoked. Traverso has no authority for the notion that a person whose property is wrongfully taken thereby acquires independent causes of action for (1) the initial loss of the property and (2) any subsequent refusal to give it back. If that were the rule, then there would be no statute of limitations for wrongful takings. The victim could wait indefinitely to demand the property's return. Settled expectations would be disrupted in contravention of another basic policy underlying

---

[4]When *Ad Way* was decided, billboard permits had to be renewed annually (*People ex rel. Dept. of Transportation v. Ad Way Signs, Inc., supra,* 14 Cal.App.4th at p. 198); they must now be renewed every five years (§ 5360, subd. (a)), and can be renewed for up to a year after their expiration (§ 5360, subd. (b)).

[5]At the hearing below on the demurrer, counsel indicated that Traverso had filed about 20 other similar suits with "the idea [of] getting in before January 1998."

statutes of limitation. (See, e.g., *Board of Regents v. Tomanio* (1980) 446 U.S. 478, 487 [100 S.Ct. 1790, 1796-1797, 64 L.Ed.2d 440].)

An argument similar to the one Traverso makes here was rejected in *Bell v. Bayly Bros.* (1942) 53 Cal.App.2d 149 [127 P.2d 662]. The plaintiffs in that case sued to recover the value of oil royalties that had allegedly been misappropriated. The royalties were exchanged for stock, which was eventually transferred to the defendants' relatives. The plaintiffs argued that their cause of action accrued when the relatives received the stock, but the court held that it accrued when the royalties were originally taken. The court wrote: "Plaintiffs cannot evade the bar of the statute by skipping lightly over the first breach of duty and claiming to found their action on some subsequent conduct in line with it. If this could be done . . . the operation of the statute of limitations could be entirely defeated." (*Id.* at p. 159.) That reasoning applies equally here.

Traverso's sole authority for a purported right to reinstatement of the revoked permits is *Monroe v. Trustees of the California State Colleges, supra,* 6 Cal.3d 399. The plaintiff in that case was a tenured college professor who had been discharged from his position in 1950 for refusing to take a loyalty oath. After our Supreme Court held in 1967 that the oath was unconstitutional, overruling its 1952 decision to the contrary, the plaintiff promptly filed suit for reinstatement to his former position and restoration of lost salary and pension rights. The court determined that the plaintiff was barred by the statute of limitations from recovering benefits which accrued between the time of his discharge and his request for reinstatement, but that he had a viable cause of action for reinstatement, along with pay and benefits accruing after his right to reinstatement arose. A right to reinstatement was recognized: to comply with provisions of the Education Code which conferred that right; to avoid chilling the exercise of First Amendment rights of special importance in schools; and to prevent a "pall of orthodoxy" from inhibiting academic freedom. (6 Cal.3d at pp. 410-412.)

The reasons identified for reinstatement in *Monroe* obviously have nothing to do with restoration of revoked billboard permits. Moreover, unlike the plaintiff in *Monroe*, who was effectively prevented by precedent from seeking reinstatement for many years, Traverso's predecessors were not precluded from contesting the alleged denials of their due process rights in a timely fashion.

Traverso suggests that his situation is comparable to the one in *Monroe* because there is also a "statutory basis" for the reinstatement he seeks. He refers us to section 5358, which directs issuance of a permit for a lawful

billboard upon a proper application, and section 5485, which imposes a penalty fee for the first permit issued after a billboard has been placed or maintained without a "valid, unrevoked and unexpired" permit.[6] As we stated above, it does not appear that the billboards here would be lawful without the permits of Traverso's predecessors. Since Traverso cannot revive those prior permits, he is not assisted by section 5358's provision pertaining to lawful billboards.

As for section 5485, it simply imposes a penalty fee and not any duty on Caltrans. That this statute contemplates a situation where a new permit could be issued after one has been revoked is of no assistance to Traverso. The availability of the new permit would depend on whether the billboard could be lawfully erected when the new permit was sought. In the case of "grandfathered" billboards like those at issue here, where their lawfulness depended on the existence of the original permits (fn. 3, *ante*), no new permits could be furnished. (See, e.g., *People ex rel. Dept. Pub. Wks. v. Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 812 [114 Cal.Rptr. 499] [Caltrans has no authority to issue permits for billboards that are prohibited by the Act].)

### III. CONCLUSION

The judgment of dismissal is affirmed with costs to Caltrans.

Sepulveda, Acting P. J., and Chiantelli, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 2001.

---

[6]Section 5358 provides: "When the application is in full compliance with this chapter and if the advertising display will not be in violation of any other state law, the director or the director's authorized agent shall, within 10 days after compliance and upon payment by the applicant of the fee provided by this chapter, issue a permit to place the advertising display for the remainder of the calendar year in the year in which the permit is issued and for an additional four calendar years." Section 5485 provides: "(a) The permit fee for each advertising sign is twenty dollars ($20) for an original permit and for each year the permit is operative, except where the applicant has placed or maintained the sign without a valid, unrevoked, and unexpired permit therefor, the fee for any issuance of the first permit thereafter is ninety-five dollars ($95), seventy-five dollars ($75) of which is the penalty. [¶] (b) The permit fee for an advertising structure for the original permit and for each year the permit is operative is twenty dollars ($20), except where the applicant has placed or maintained the structure without a valid, unrevoked, and unexpired permit therefor, the fee for any issuance of the first permit thereafter is ninety-five dollars ($95), seventy-five dollars ($75) of which is the penalty."

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, § 6 of the California Constitution.