[Sac. No. 5355.   In Bank.—August 26, 1940.]

THOMAS J. CARROLL, Respondent, v. CALIFORNIA HORSE RACING BOARD, Appellant.

Earl Warren, Attorney-General, and Ralph H. Cowling, Deputy Attorney-General, for Appellant.

Burton K. Wheeler and John L. Wheeler for Respondent.

THE COURT.—The controversy which is before this court upon an appeal from a judgment ordering a writ of mandate to issue, concerns the right of the Horse Racing Board, established under the provisions of the California Horse Racing Act (Stats. 1933, p. 2046; Deering's Gen. Laws, 1937, Act 3421, p. 1634), to suspend the respondent's license as a trainer of horses. More specifically, the question is whether such action may be taken without affording the licensee a hearing.

On January 1, 1937, petitioner was granted a trainer's license for a period of one year, under the provisions of the Horse Racing Act, *supra*. His signed application contained an agreement to comply strictly with the statute and the rules and regulations of the board, and a further agreement that the license might be summarily revoked or suspended by it. The license recited that it might "at any time be revoked, canceled, temporarily suspended or withdrawn".

Pursuant to authority given by the statute, the board adopted various rules for the regulation of horse racing where bets are made. Under these rules, the officials of a race meeting include three stewards, employed by the association holding the meeting, with authority to determine all questions pertaining directly to racing. The stewards generally supervise the conduct of the race and the "owners, trainers, jockeys, grooms, and other persons attendant on horses". They have power to impose fines on such persons, or to suspend them for the duration of the race, reporting such fines or suspensions to the Horse Racing Board.

Another rule of the board provides that approved equipment for the administration of saliva test will be required at all meetings. "Should the chemical or other analysis of saliva sample taken prove positive, showing the presence of any narcotic, stimulant, chemical or drug of any kind or description, the Owner and Trainer of the horse, either or both, may be suspended or ruled off for life."

In a race run at the Santa Anita track on January 1, 1937, a horse named "Proclivity", owned and entered by Norman W. Church, won. The regular trainer of this horse was ill at the time of the race, and the respondent, an employee of Church, was substituting for him on that day. After the race, a saliva sample was submitted to chemists, who reported positive reactions to alkaloids, indicating the probable use of strychnine as a stimulant. The report was considered by the racing stewards at various meetings during January, 1937, as a result of which the respondent was ordered suspended pending further investigation. This action of the stewards was reported to the Horse Racing Board, which also held meetings, considered evidence, and on October 6, 1937, adopted findings that the horse had been drugged and that respondent was at that time its trainer. Upon these findings the board ordered that petitioner's license should be suspended to and including December 31, 1937. The present proceeding followed.

The issue is a narrow one. The superior court found, and its finding is not challenged, that the respondent was not notified of the fact that the Horse Racing Board was considering the suspension of his license, and he was given no hearing prior to its action. But the respondent, although contending that there is no credible evidence concerning the horse's drugging, does not rely upon its insufficiency as the ground of his attack upon the board's action. His basic contention is that, although, under the rules of the board, the trainer is responsible for the condition of a horse in his charge, a license may not be revoked without notice and hearing. This contention may, perhaps, raise a question of constitutional due process of law, but the petitioner rests his case squarely upon the language of the statute. The issue, as so presented, is whether the Horse Racing Act, *supra*, by its terms requires that notice and hearing be given before a license granted pursuant to its provisions may be suspended.

The relevant provisions of the statute may be briefly stated. Section 3 provides in part: "No qualified person shall be refused such license, nor shall such license be revoked *without just cause*." Section 9 provides that if a license is suspended or revoked, the board shall state publicly its reason for so doing and enter such reasons in its minute book; and that the propriety of its action shall be subject to review, on ques-

tions of law only, by the superior court. Section 5 provides that the governor may remove any member of the Horse Racing Board for cause, "giving him a copy of the charges against him and an opportunity to be heard."

▮  The board's argument is that the statute makes an express requirement of notice and hearing in the case of the removal of a member of the board, but omits any such requirement where the suspension or revocation of a trainer's license is concerned. This omission is said to indicate a legislative intent not to require notice and hearing. The board also stresses the alleged need for summary action in these situations.

This argument, although not without persuasive force, fails to give effect to the provision in section 3, that no license may be revoked "without just cause". This phrase is familiar in licensing statutes, and has been generally recognized as implying a right to notice and hearing. It would be difficult to give it any other interpretation, for the determination of "just cause" necessarily requires a fair consideration of any evidence offered by the accused. As the court said in *State* v. *Louisiana State Boxing Com.*, 163 La. 418 [112 So. 31, 33], holding that a license to conduct boxing matches could not be revoked without notice and hearing: "Since it is contrary to all legal principles and against the spirit of common fairness to condemn any individual upon any charge without giving an opportunity to meet and disprove it, and since the statute does not in express terms dispense with notice and hearing, we think by fair implication when it restrains the right of revocation by the commission for cause only, it necessarily means for any cause which the commission may determine justifies such action after notice and hearing to the licensee to appear and answer any charge or complaint lodged against him."

This decision is clearly in point. A number of California cases, dealing with powers to act "for cause", are to the same effect. (See *Bannerman* v. *Boyle*, 160 Cal. 197 [116 Pac. 732]; *Welch* v. *Ware*, 161 Cal. 641 [119 Pac. 1080]; *Knights of Ku Klux Klan* v. *Francis*, 79 Cal. App. 383 [249 Pac. 539]; also, on the general question of the right to notice and hearing where licenses are involved, *Wichita Council No. 120* v. *Security Benefit Assn.*, 138 Kan. 841 [28 Pac. (2d) 976, 979, 94 A. L. R. 629]; *State* v. *Sullivan*, 98 Mont.

425 [40 Pac. (2d) 995, 99 A. L. R. 321]; *Narragansett Racing Assn.* v. *Kiernan*, 59 R. I. 79 [194 Atl. 49]; *People* v. *Noggle*, 7 Cal. App. (2d) 14 [45 Pac. (2d) 430]; *Martin* v. *Board of Supervisors*, 135 Cal. App. 96 [26 Pac. (2d) 843, 99 A. L. R. 321].) The board seeks to distinguish these cases upon the theory that they deal with occupations not inimical to the public welfare, or with public officers, while the present case involves a statute regulating the activity of racing and betting on races, which is essentially dangerous to the public if not properly controlled. This argument, however, is nothing more than an attempt to justify an express legislative denial of notice and hearing as consistent with the constitutional guaranty of due process of law. On the question of the constitutional power to authorize revocation of licenses in certain business involving dangers to the public without notice and hearing there is considerable uncertainty in the cases. But this question is not now before the court because the legislature has not denied the right to a hearing, and the issue is whether the statute, by its terms, gives that right.

■ The authorities cited above indicate that statutory provisions requiring "cause" for revocation of licenses or removal of officers carry with them by implication the right to notice and hearing. The legislature must be deemed to have enacted the present statute with knowledge of these decisions (*Estate of Moffitt*, 153 Cal. 359 [95 Pac. 653, 1025, 20 L. R. A. (N. S.) 207]; *Ex parte Nowak*, 184 Cal. 701, 705 [195 Pac. 402]), and therefore, by the use of the words "without just cause", to have intended to require notice and hearing as a condition to the revocation of a license issued under the Horse Racing Act, *supra*.

It is true that the opinion in *State Board of Equalization* v. *Superior Court*, 5 Cal. App. (2d) 374 [42 Pac. (2d) 1076], a case dealing with a liquor license, expresses a view contrary to the foregoing decisions, but without any consideration of them. But the conclusion reached in that case is contrary to both principle and authority, and it is disapproved to the extent that it is inconsistent with the present decision.

■ Also, there is no merit in the contention that the respondent waived his right to a hearing by signing the application for a license. If the application and license issued upon it purport to deny this right, the board, in forcing petitioner to give up his statutory right, was acting wholly

beyond its powers. An administrative board may not evade the provisions of a statute by any such method.

The judgment is affirmed.

Gibson, C. J., deeming himself disqualified, did not participate in this opinion.