[No. S029371. Dec. 30, 1993.]

RICHARD TRAVERSO, Plaintiff and Appellant, v.
THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION,
Defendant and Respondent.

1154

COUNSEL

Joseph A. Forest and Terry J. Traktman for Plainitff and Appellant.

Ronald W. Beals as Amicus Curiae on behalf of Plaintiff and Appellant.

Charles E. Spencer, Jr., William M. McMillan, Joseph C. Easley, James E. Livesey and O. J. Solander for Defendant and Respondent.

OPINION

LUCAS, C. J.—Section 5463 of the Business and Professions Code permits the California Department of Transportation (hereafter Caltrans), on 10 days' written notice, to revoke a permit or license and remove and destroy any off-premises billboard that fails to comply with the provisions of the California Outdoor Advertising Act (Bus. & Prof. Code, § 5200 et seq.; further statutory references are to this code unless otherwise indicated). In this case we must decide whether the provisions of the first paragraph of section 5463, authorizing Caltrans to take such action, impermissibly interfere with the procedural due process guarantees of the state and federal Constitutions. For the reasons set forth below, we uphold the facial validity of the portion of section 5463 in question and find that its application to the billboard owner here did not offend state and federal due process principles.

We express no opinion on the constitutional validity of the statute's remaining provisions. Our reference here to "section 5463," rather than to its first paragraph, is for convenience only.

## I. FACTS

In 1933, the Legislature enacted a statutory scheme for the regulation of off-premises advertising structures. Under then-existing provisions, permits for billboards were issued with little concern for considerations other than safety, structural stability, and public decency. (See 55 Ops.Cal.Atty.Gen. 1, 6 (1972).)

Three decades later, in an attempt to spearhead legislation designed to beautify American cities, President Lyndon Johnson urged Congress to enact

a legislative scheme that would effectively regulate outdoor advertising. (111 Cong. Rec. 28, 30 (1965).) The congressional response was to amend substantially the Highway Beautification Act of 1965 (23 U.S.C. § 131). Among other provisions, section 131(b) was added, imposing a 10 percent reduction in federal highway funding for any state that failed to maintain "effective control" over highway advertising by enforcing specific standards.

In response to the new federal enactments, the Legislature in 1967 amended the Outdoor Advertising Act (hereafter the Act), greatly expanding the state's regulatory authority over outdoor advertising by creating stricter standards for the erection and maintenance of billboards. (*United Outdoor Advertising Co.* v. *Business, Transportation & Housing Agency* (1988) 44 Cal.3d 242, 245 [242 Cal.Rptr. 738, 746 P.2d 877]; see also *People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 515-516 [213 Cal.Rptr. 247, 698 P.2d 150].) State regulation was extended to every mile of every major road in California with emphasis placed not only on public safety and welfare, but also on protecting the public investment in California's highways and on aesthetic considerations. (*People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 811 [114 Cal.Rptr. 499].)

The Act requires that in order to engage in the business of outdoor advertising, one must first obtain a license. (§ 5301.) Before placing a billboard that is subject to the Act, the billboard owner must also apply for and secure a written permit. (§ 5350.) Permits must be renewed on January 1 each year, and they expire on December 31 of that year. (§ 5360.)

In 1959, Traverso, licensed to do business as Adco Outdoor Advertising (hereafter Adco), applied for and received two valid permits authorizing placement of a V-shaped advertising display along Highway 101 in Cotati, California. Although the structure technically constituted two displays and therefore required two permits, for convenience we will hereafter refer to these permits collectively as the "permit."

Following the 1967 amendments to the Act, Adco's billboard became "nonconforming," which meant it was lawfully placed in 1959, but did not conform to the provisions of the Act enacted subsequent to the placement (see Cal. Code Regs., tit. 4, § 2241) because it was not located in a business area within the meaning of section 5205. Pursuant to section 5410, a nonconforming billboard is subject to removal on or after July 1, 1970, but

before a nonconforming billboard is removed, its owner must be justly compensated. (See Bus. & Prof. Code, § 5412.) Adco was allowed to maintain its billboard pursuant to a grandfather clause contained in section 5408, subdivision (d), of the Act.

Adco renewed its permit each year up to and including December 31, 1984, as required by section 5360. In early 1984, the billboard fell down due to circumstances that are apparently still undetermined. If the billboard was destroyed "as the result of criminal or tortious acts," as Caltrans assumes, then repair of the structure must be completed within 30 days after receipt of written notice from Caltrans. (See Cal. Code Regs., tit. 4, § 2272.) If, on the other hand, the billboard blew down in a windstorm as Adco maintains, there appears to be no express time limit for completion of repairs.

In any event, Caltrans sent Adco the following letter, dated February 10, 1984: "A recent outdoor advertising field survey conducted by this branch has indicated that the nonconforming structure owned by you . . . has been removed. [¶] Under the provisions of the Outdoor Advertising Act and the California Administrative Code, Title 4, Chapter 6, customary maintenance is allowed in maintaining a sign as well as replacing a downed or damaged structure provided the replacement cost does not exceed 50% of the appraised value of the sign in its pre-existing state. However, this office must be notified of your plans and be provided a reasonable time schedule for the completion of the job. [¶] Unfortunately, a new application could not be approved for this nonconforming location. So, unless we hear from you within 30 days, we will have to cancel the permit and remove it from our compensable sign list. If you have any questions regarding the above, feel free to contact this office anytime." The letter was signed by "Stan Lancaster, Chief."

It is disputed whether Adco responded. In any event, Caltrans notified Adco by letter dated April 30, 1984, that its permit had been revoked. Following receipt of the letter, Adco made no attempt to renew the billboard's now-revoked permit for 1985 or 1986. Two years later, however, in June 1986, Adco rebuilt the billboard near its original location. It did so without first obtaining Caltrans's approval or attempting to secure a new permit.

Shortly thereafter, on June 11, 1986, Caltrans posted a notice on the billboard, citing Adco for various violations of the Act, including the

placement of a billboard without a permit. A copy of the notice was immediately mailed to Adco. Adco responded to the notice by claiming that the cited billboard was simply a reconstruction of the original. It did not request an administrative review.

On or about August 31, 1987, after repeated conversations and correspondence between the parties, Caltrans began to remove the billboard pursuant to its authority under section 5463. The statute reads as follows: "The director may revoke any license or permit for the failure to comply with the provisions of this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter after 10 days' written notice posted on such structure or sign and a copy forwarded by mail to the display owner at his last known address."

Adco filed the present action in superior court challenging the constitutionality of section 5463 and Caltrans's actions. The trial court issued a temporary restraining order and preliminary injunction preventing Caltrans from removing the new billboard pending the outcome of the litigation. It then granted Caltrans's subsequent motion for summary judgment, ruling that the holding in *People* ex rel. *Dept. of Public Works* v. *Adco Advertisers* (1973) 35 Cal.App.3d 507 [110 Cal.Rptr. 849] (hereafter *Adco Advertisers*), settled all questions regarding the Act's constitutionality.

The Court of Appeal reversed. It first noted that *Adco Advertisers* held only that abatement of an offending billboard pursuant to the Act fell within the state's legitimate police powers and thus did not involve a taking requiring just compensation. The court correctly observed that *Adco Advertisers* did not reach the question whether section 5463 affords due process.

The Court of Appeal then examined Adco's constitutional challenge to section 5463. The court concluded that "the first paragraph of section 5463 of the Act is unconstitutional on its face because it does not provide for the fundamental due process right of an opportunity to be heard before sign owners are deprived of their property."

For the reasons set forth below, we disagree with the Court of Appeal and find that section 5463 is valid on its face. In addition, although we agree with the Court of Appeal that Adco possessed protectible property interests in its billboard and permit, we find that, on the particular facts presented here, Adco received all the process it was due.

## II. Discussion

Both the United States and the California Constitutions guarantee that government may not deprive an individual of "life, liberty, or property, without due process of law." (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7.) To determine whether a governmental deprivation implicates the requirements of due process, "we must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 571 [33 L.Ed.2d 548, 557, 92 S.Ct. 2701].) Thus, our examination of the constitutional validity of section 5463 begins with an inquiry into whether billboards and permits are property interests subject to due process protections.

### A. *Protectible Property Interests*

"The Fourteenth Amendment speaks of 'property' generally." (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 90 [32 L.Ed.2d 556, 575-576, 92 S.Ct. 1983].) In interpreting this term, the United States Supreme Court has consistently recognized that due process concerns are implicated whenever the state acts to deprive an individual of an interest in the use of real or personal property, using that term in its "colloquial sense." (See Tribe, American Constitutional Law (2d ed. 1988) p. 680.) For example, in *Ewing* v. *Mytinger & Casselberry, Inc.* (1950) 339 U.S. 594 [94 L.Ed. 1088, 70 S.Ct. 870], the court performed a due process analysis and impliedly found a property interest to exist in mislabeled food supplements seized under a provision of the federal Food, Drug, and Cosmetic Act. (See also *Fuentes* v. *Shevin*, *supra*, 407 U.S. 67 [state seizure of household goods subject to repossession by seller].) The federal courts of appeals have found the existence of protectible property interests in personal possessions as "undesirable" as junk cars. (See, e.g., *Propert* v. *District of Columbia* (D.C. Cir. 1991) 948 F.2d 1327 [292 App.D.C. 219]; *Price* v. *City of Junction, Texas* (5th Cir. 1983) 711 F.2d 582.)

This court and the state's appellate courts have likewise recognized a protectible interest in tangible personal property, including property subject to seizure and/or destruction pursuant to local ordinance or statute. (See *Kash Enterprises* v. *City of Los Angeles* (1977) 19 Cal.3d 294 [138 Cal.Rptr. 53, 562 P.2d 1302] [seizure of newsracks violating city ordinance]; *Blair* v. *Pritchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206] [seizure of refrigerator under state's claim and delivery statute];

*People* v. *Broad* (1932) 216 Cal. 1 [12 P.2d 941] [seizure of car used to transport narcotics under civil forfeiture statute]; *Bryte* v. *City of La Mesa* (1989) 207 Cal.App.3d 687 [255 Cal.Rptr. 64] [confiscation of mental patient's firearms and deadly weapons]; *Menefee & Son* v. *Department of Food & Agriculture* (1988) 199 Cal.App.3d 774 [245 Cal.Rptr. 166] [seizure of crops treated with unauthorized chemical]; *Phillips* v. *San Luis Obispo Dept. of Animal Regulation* (1986) 183 Cal.App.3d 372 [228 Cal.Rptr. 101] [destruction of vicious dog]; *Hughes* v. *Neth* (1978) 80 Cal.App.3d 952 [146 Cal.Rptr. 37] [destruction of motorcycle with illegally altered serial number].)

■ Consistent with this well-established due process doctrine, we find that a billboard constitutes a protectible property interest. The value of a billboard, and thus its potential for achieving protected property status, derives primarily from its use as an advertising medium. It is uncontradicted that a single billboard can generate several thousand dollars per month in advertising revenues. We also note that, aside from its value as an advertising medium, the billboard structure itself has inherent, pecuniary worth. For example, a billboard structure may have value on the open market or as salvage.

Caltrans urges us to follow the reasoning of the Florida Supreme Court in *Department of Transportation* v. *Durden* (Fla. 1985) 471 So.2d 1271 (hereafter *Durden*). In that case, a billboard owner erected a billboard without first applying for a permit. (*Id.* at p. 1272.) The court held that a protectible property interest does not arise when the government seeks to remove a billboard erected in knowing violation of the law. (*Ibid.*)

Because we find that a billboard, in and of itself, constitutes a protectible property interest, we cannot agree with the Florida Supreme Court that a billboard erected in violation of the Act fails to implicate a protectible property interest. As the Supreme Court noted in *Fuentes* v. *Shevin*, *supra*, the "relative weight of . . . property interest[s] is relevant to the form of notice and hearing required by due process. . . . But some form of notice and hearing—formal or informal—is required before deprivation of a property interest . . . ." (*Fuentes*, *supra*, 407 U.S. at p. 90, fn. 21 [32 L.Ed.2d at pp. 575-576].) The fact that a billboard may be in violation of the Act is significant in determining what predeprivation procedures may be due, but not to the threshold question whether a protectible property interest exists.

We do not question that Caltrans has the authority, under the state's legitimate police power, to remove and destroy any billboard found to be in

violation of the Act. (See *Adco Advertisers, supra,* 35 Cal.App.3d at p. 512 [abatement under the Act is valid exercise of state's legitimate police power]; see also *People* ex rel. *Dept. of Public Works* v. *Golden Rule Church Assn.* (1975) 49 Cal.App.3d 773, 777 [122 Cal.Rptr. 596]; *People* ex rel. *Dept. of Transportation* v. *Harris* (1982) 128 Cal.App.3d 264, 267 [180 Cal.Rptr. 148].) Nonetheless, this authority should not be used to abrogate the guarantees embodied in the due process clause. To the extent that the Florida court in *Durden, supra,* 471 So.2d 1271, deemed the state's exercise of its police power to subsume the protections of due process, we disagree with its analysis.

■ When the state acts to deprive an individual of an important interest, it may not do so without affording the procedural due process protection required by the Fourteenth Amendment. (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337, 342 [23 L.Ed.2d 349, 354, 89 S.Ct. 1820].) Once a permit has been issued, its continued possession becomes a significant factor in the billboard owner's legitimate pursuit of a livelihood. The revocation of a permit thus involves state action affecting important interests of its owner, and therefore cannot be accomplished without affording the procedural due process required by the Constitution. (See, e.g., *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94-95, 91 S.Ct. 1586] [suspension of driver's license invokes due process protections]; *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara* (1948) 85 Cal.App.2d 776, 783-784, 797-798 [194 P.2d 148] [permit issued to oil company to drill particular well could not be revoked without due process].)

"The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision-making that it guarantees works, by itself, to protect against arbitrary deprivation of property." (*Fuentes* v. *Shevin, supra,* 407 U.S. at p. 81 [32 L.Ed.2d at p. 570].) As we pointed out earlier, it is well established that the revocation of permits for, and the removal and destruction of, billboards authorized by section 5463 constitute a proper exercise of the police power of the state. Our finding of protectible property interests here does not alter the legitimacy of this authority. Instead, it merely acknowledges and affirms a basic principle of due process jurisprudence: that before Caltrans, as an agent of the state, may act to revoke a permit or to abate a billboard maintained in violation of the Act, notice and the opportunity to be heard must be provided. (See, e.g., *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652]; *Bell* v. *Burson, supra,* 402 U.S. at pp. 539-543 [29 L.Ed.2d at pp. 94-95].)

Adco contends that the due process clause of the California Constitution protects a wider range of interests than does the federal due process clause.

(See *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622]; *Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 327 [248 Cal.Rptr. 704].) Because we find that billboards and permits constitute property interests for purposes of Fourteenth Amendment due process protection, we need not undertake a separate due process analysis under our state Constitution.

## B. *The Process That Is Due*

Having determined that permits and billboards are protectible property interests and that therefore due process applies, "the question remains what process is due." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].) " 'The fundamental requisite of due process of law is the opportunity to be heard,' . . . a right that has 'little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest.' " (*Goss* v. *Lopez* (1975) 419 U.S. 565, 579 [42 L.Ed.2d 725, 737, 95 S.Ct. 729] [quoting *Grannis* v. *Ordean* (1914) 234 U.S. 385, 394 [58 L.Ed. 1363, 1368-1369, 34 S.Ct. 779]; and *Mullane* v. *Central Hanover Tr. Co.*, *supra*, 339 U.S. at p. 314 (94 L.Ed. at p. 873)].)

■ Section 5463 provides for 10 days' prior notice to the billboard owner before Caltrans may either revoke a permit or license or remove a billboard. Although the notice period is relatively short, we find it meets the notice component of due process. Ten days is not an unreasonable length of time for a billboard owner, in most cases a sophisticated business entity engaged in the business of outdoor advertising (§ 5301), to adequately investigate and decide whether to challenge Caltrans's determination of a violation of the Act. (Compare with *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 268 [25 L.Ed.2d 287, 299, 90 S.Ct. 1011] [seven days' notice prior to termination of public assistance benefits].)

■ Section 5463 does not contain an express right to a hearing.
■ Both the United States Supreme Court and this court, however, have inferred a right to a hearing when constitutional problems would otherwise arise. (See *Greene* v. *McElroy* (1959) 360 U.S. 474, 507-508 [3 L.Ed.2d 1377, 1396-1398, 79 S.Ct. 1400]; *English* v. *City of Long Beach* (1950) 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]; *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].) As we said nearly 80 years ago, "whatever is necessarily implied in a statute is as much part of it as that which is expressed." (*Johnson* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].)

In the face of statutory silence, the right to a hearing may be inferred where there is "some language" from which such a requirement can be implied. (*Merco Construc. Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.* (1969) 274 Cal.App.2d 154, 168 [79 Cal.Rptr. 23]; see, e.g., *People* v. *Amor* (1974) 12 Cal.3d 20, 29-30 [114 Cal.Rptr. 765, 523 P.2d 1173] [notice and hearing inferred from statute requiring criminal defendants to reimburse some court costs incurred by appointed counsel]; *Carroll* v. *California Horse Racing Board* (1940) 16 Cal.2d 164, 168 [105 P.2d 110] [hearing inferred from statute providing for horse training license revocation for "just cause"]; cf. *California Radioactive Materials Management Forum* v. *Department of Health Services* (1993) 15 Cal.App.4th 841, 858 [19 Cal.Rptr.2d 357] ["hearing on the record" language does not imply Administrative Procedures Act adjudicatory hearing]; *Phillips* v. *San Luis Obispo County Dept. of Animal Regulation*, *supra*, 183 Cal.App.3d 372, 379 [no language within dog destruction ordinance from which to infer hearing].)

In addition, when a statute contemplates a quasi-judicial determination by an administrative agency, the statute will be interpreted to require a hearing "unless the statute expressly provides to the contrary . . . ." (*Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 271 [246 P.2d 656].)

Our decision in *Simpson* v. *City of Los Angeles* (1953) 40 Cal.2d 271 [253 P.2d 464] illustrates the foregoing principle. In that case, the plaintiffs challenged a series of ordinances that allowed the state Department of Animal Regulation to release to research facilities impounded animals not claimed within five days. (*Id.* at pp. 276-283.) The plaintiffs argued that the law violated due process because it deprived them of their property without a hearing. (*Id.* at p. 281.)

We rejected the claim, finding instead that, although not expressly stated, the ordinances contemplated the right to a hearing. We held that the statutory language requiring the return of unlawfully seized animals to their owners contemplated a factual, or mixed factual and legal, determination by the department. (*Simpson* v. *City of Los Angeles*, *supra*, 40 Cal.2d at p. 282.) Under these circumstances, we interpreted the statute to provide for a hearing, when requested by the dog owner, on the issue whether the animal had been legally seized. (*Ibid.*)

 Bearing in mind the related principles that "statutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional" (*Erlich* v. *Municipal Court*

(1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]), and that we must decide all "presumptions and intendments" in favor of a statute's constitutionality (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247]), and for the additional reasons set forth below, we hold that section 5463 contains an implicit right to a hearing.

Section 5463's express requirement of 10 days' written notice prior to revocation or removal constitutes language indicating that the Legislature intended the right to a hearing. The 10-day period can serve only one function: to allow the billboard owner sufficient time to investigate and, if appropriate, *to contest* Caltrans's determination that a violation has occurred. Nothing in the Act or the regulations indicates that Caltrans would refuse to afford the billboard owner a hearing on request. We find relevant here the principle that what the Constitution requires is not that a hearing be held, but rather that the government provide the "*opportunity* . . . 'for [a] hearing appropriate to the nature of the case . . . .' " (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378 [28 L.Ed.2d 113, 119, 91 S.Ct. 780] [citing *Mullane* v. *Central Hanover Tr. Co.*, *supra*, 339 U.S. at p. 313 [94 L.Ed. at pp. 872-873], italics in original.)

Section 5463 provides that Caltrans may revoke a permit or license, or remove a billboard, that fails to comply with or violates the Act. The statute thus contemplates that a "factual or mixed factual and legal determination" (*Fascination, Inc.* v. *Hoover*, *supra*, 39 Cal.2d at p. 269) will be made by Caltrans prior to taking action. Under these circumstances, we conclude that section 5463 implicitly provides for a hearing, when requested by the billboard owner, on the issue whether a violation of the Act has occurred.

We observe that the statute does not expressly *withhold* the right to a hearing. Section 5463 simply provides that the "director may revoke any license or permit for the failure to comply with the provisions of this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter . . . ." By contrast, under the second paragraph of section 5463, *temporary* displays in violation of the Act may be removed and destroyed "*summarily and without notice.*" (Italics added.)

Adco's argument to the contrary is unpersuasive. It points to the fact that the Legislature amended the Act in 1987 to expressly provide owners of *on-premises* billboards the opportunity to be heard prior to abatement of such billboards. (See § 5499.7, added by Stats. 1987, ch. 1281, § 6, pp. 4569-4573.) Adco contends that by not acting when presented with the opportunity to provide similar protection for off-premises billboard owners, the Legislature has evinced its intent not to provide for a hearing.

■ It is a well-settled principle of statutory construction that " ' "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622].) Nonetheless, this principle is inapplicable when, as here, the "given provision" contained in a related statute was added by amendment many years after the enactment of the statute containing no such provision. Moreover, contrary to Adco's contention, it is not apparent to us that in amending section 5499.7, the Legislature was necessarily concerned with anything beside the removal of on-premises advertising displays.

Adco also argues that finding an implied hearing would be contrary to numerous decisions in which statutes failing to expressly provide for notice and a hearing were deemed unconstitutional. (See, e.g., *Kash Enterprises* v. *City of Los Angeles*, *supra*, 19 Cal.3d 294 [confiscation of newsracks]; *Merco Construction Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.*, *supra*, 274 Cal.App.2d 154 [penalty assessed against contractor for unlawful bid-shopping and bid-peddling]; *Phillips* v. *San Luis Obispo County Dept. of Animal Regulation*, *supra*, 183 Cal.App.3d 372 [destruction of vicious or biting dogs]; *Menefee & Son* v. *Department of Food & Agriculture*, *supra*, 199 Cal.App.3d 774 [seizure and destruction of crops treated with unregistered poison].) The statutes in those cases, however, not only failed to provide for the opportunity to be heard, but failed to provide for predeprivation *notice* as well. Nor did they contemplate factual or "just cause" determinations or contain any other language "from which a legislative requirement for a hearing could be inferred." (*Merco Construction Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.*, *supra*, 274 Cal.App.2d at p. 168.)

■ Section 5463, on the other hand, provides for notice of an impending action by Caltrans. As explained previously, this provision for notice creates a reasonable inference that the Legislature intended to provide the opportunity for a hearing.

In sum, because section 5463 (1) provides for 10 days' notice prior to revocation or removal, (2) contemplates a fact-finding determination by Caltrans that a violation of the Act has occurred, and (3) contains no express provision precluding a hearing, we conclude that section 5463 contains an implicit right to such a hearing. Having found an implied right to a hearing, we conclude that the statute satisfies the requirements of due process. Section 5463 is therefore valid on its face.

### C. *Section 5463 as Applied to Adco*

█ Adco claims that section 5463 unconstitutionally authorized Caltrans to deprive it of property without a hearing. Although we recognize that Adco possesses a protectible property interest in its billboard, Adco cannot complain of an impermissible deprivation. Because the right to a hearing can be inferred from the language of section 5463, Adco's failure to request a hearing after receiving notice that Caltrans intended to remove its billboard is fatal to its constitutional challenge.[1] Due process requires the *opportunity* to be heard, rather than an actual hearing (*Boddie* v. *Connecticut, supra*, 401 U.S. at p. 378 [28 L.Ed.2d at p. 119]), and, as we have explained, the statute impliedly afforded Adco such an opportunity in this case.

### CONCLUSION

The judgment of the Court of Appeal, finding section 5463 facially invalid and ordering the superior court to enter judgment in favor of Adco, is reversed. The Court of Appeal is directed to reverse the judgment of the superior court and to order that court to consider further proceedings on the issue whether Caltrans's revocation of Adco's permit was unlawful.

Mosk, J., Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.,** Dissenting.—The United States Constitution prohibits government from depriving an individual of property without due process of law. This guarantee means that before the government may take property, it must provide the property owner with a right to a hearing on the proposed deprivation, and advance notice of that hearing. In this case, the majority holds that the state may seize and destroy a billboard, although the record unequivocally shows that the owner of the billboard was never given any notice that he had a right to a hearing.

I dissent. Because the billboard owner received no notice informing him that he was entitled to contest the state's determination that his property

---

[1]The dissent focuses on the language of this notice, dated June 11, 1986, as the basis for its view that Caltrans acted unconstitutionally in failing to provide adequate notice of a hearing to Adco. We note, however, that the June 11 notice was but the last in a series that began with Caltrans's letter to Adco in February 1984 when Adco's original billboard had been damaged. We conclude that the letters and other communications beginning in February 1984, and ending with the final notice of June 11, 1986, *taken together*, provided ample notice to Adco that it was entitled to challenge Caltrans's intended removal of the billboard.

would be destroyed, his constitutional right to due process was violated. The majority's approach is contrary to controlling precedent of the United States Supreme Court, and its result is offensive to fundamental fairness.

FACTS[1]

Richard Traverso, doing business as Adco Outdoor Advertising, owned two off-premises billboards in Cotati. The billboards were mounted on a "V" type display structure. Permits were first granted for the billboards by the California Department of Transportation (hereafter Caltrans) in 1959, and in 1967 the billboards were classified as legal but nonconforming displays under the Outdoor Advertising Act, Business and Professions Code section 5200 et seq. (hereafter the Act).[2] The billboards were nonconforming because they were not located in an area zoned primarily for business or industry. In February 1984, the billboard structure fell down due to causes that are disputed. On February 10, 1984, Caltrans sent a letter to Traverso stating that the billboard structure "has been removed" and that unless he responded within 30 days his permit would be canceled. It is disputed whether Traverso responded; in any event, Caltrans went ahead and canceled the permits on April 30, 1984. Permits are ordinarily valid for one year, after which they lapse and the sign owner must apply for a renewal for the next year. Traverso's permits would have expired in December 1984 had they not been cancelled by Caltrans. Traverso did not attempt to renew the permits for 1985 or 1986.

In June 1986, Traverso began to rebuild the billboard. Shortly thereafter, on June 11, 1986, Caltrans placed a notice on the billboard, citing the owner for asserted violations of the Act. In August 1987, after repeated communications between the parties, Caltrans began to physically remove the display, and Traverso filed this lawsuit, challenging the constitutionality of section 5463, under which Caltrans claimed authority to summarily remove and destroy the billboard structure.

The trial court issued a temporary restraining order and a preliminary injunction enjoining Caltrans from removing the display, but later granted summary judgment for Caltrans. Traverso appealed, and in a published opinion the Court of Appeal reversed the trial court's judgment in favor of Caltrans, determining that section 5463 is unconstitutional because it fails to

---

[1]This statement of facts is adapted from the opinion of the Court of Appeal.
[2]All further unlabeled statutory references are to the Business and Professions Code.

afford owners of advertising displays any opportunity for a hearing when Caltrans removes a billboard or revokes a permit for a billboard. This court then granted Caltrans's petition for review. Enforcement of the order granting summary judgment and dissolving the preliminary injunction has been stayed pending resolution of this case on appeal.

DISCUSSION

In this case, Caltrans proceeded under the authority of section 5463, which provides, in pertinent part:

"The director may revoke any license or permit for the failure to comply with the provisions of this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter after 10 days' written notice posted on such structure or sign and a copy forwarded by mail to the display owner at his [or her] last known address."

The majority concludes that billboard permits as well as billboard structures are property interests protected by the due process guarantee. I agree. The majority also concludes that section 5463 is not invalid on its face for failure to provide a hearing, because this court may "imply" a hearing requirement from the statute's notice requirement. I express no view on this question; it is unnecessary to the resolution of this case because, regardless of whether a hearing requirement may properly be "implied" in section 5463, Caltrans acted unconstitutionally in failing to provide adequate notice of a hearing to Traverso.

The relevant principles are well established. Although the process due an individual under the Fourteenth Amendment to the United States Constitution varies with the nature of the case, procedural due process requires, at a minimum, notice and an opportunity to be heard before a person may be permanently deprived of a property interest. (E.g., *Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 542 [84 L.Ed.2d 494, 503-504, 105 S.Ct. 1487]; *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1108 [278 Cal.Rptr. 346, 805 P.2d 300].)

"An elementary and fundamental requirement of due process in any proceeding . . . is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an*

*opportunity to present their objections.* [Citations.] *The notice must be of such nature as reasonably to convey the required information* [citation], and it must afford a reasonable time for those interested to make their appearance [citations]." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652] (italics added); accord, e.g., *Memphis Light, Gas & Water Division* v. *Craft* (1978) 436 U.S. 1, 13, 22 [56 L.Ed.2d 30, 41-42, 46-47, 98 S.Ct. 1554][holding that public utility's procedure for terminating service violated due process because notice failed to inform customers of procedures for contesting terminations]; *Minor* v. *Municipal Court* (1990) 219 Cal.App.3d 1541, 1550-1551 [268 Cal.Rptr. 919] [holding that notice that failed to inform claimant of statutory procedure to set aside declaration of forfeiture violated due process]; *People* v. *Swink* (1984) 150 Cal.App.3d 1076, 1081 [198 Cal.Rptr. 290] [same]; see *Brock* v. *Roadway Express, Inc.* (1987) 481 U.S. 252, 264 [95 L.Ed.2d 239, 251-252, 107 S.Ct. 1740].)

In this case, the notice provided to Traverso fails to meet the high court's requirements. A copy of the notice, labeled as "Exhibit B" in the trial court and dated June 11, 1986, is attached as an appendix to this dissent. It reads, in pertinent part:

"You are hereby notified that the display described above is in violation of the Outdoor Advertising Act, and may be removed and destroyed if no action toward legalizing it is taken prior to 7-17-86. To avoid misunderstanding, acknowledge and comply promptly. Do not remove citation from display or return this notice until violation has been corrected."

Nothing in this notice was "reasonably calculated" to apprise Traverso of "the availability of an administrative procedure to consider" its complaint of an erroneous determination by Caltrans (*Memphis Light, Gas & Water Division, supra,* 436 U.S. at p. 22 [56 L.Ed.2d at pp. 46-47]; see *Petrillo* v. *Bay Area Rapid Transit Dist.* (1988) 197 Cal.App.3d 798, 809 [243 Cal.Rptr. 74]). Indeed, nothing in the notice indicated that Traverso had any choice other than to (1) comply with the bureaucracy's demands to "correct" the alleged violations, or (2) stand by and watch idly as Caltrans removed and destroyed his billboard.

In a footnote, the majority responds to this dissent by claiming that the notice requirement of the due process clause was satisfied because Caltrans had exchanged "letters and other communications" with Traverso before the

notice of June 11, 1986, and thus Traverso had received all the notice to which he was constitutionally entitled. (Maj. opn., *ante*, at p. 1168, fn. 1.)

The majority's argument is defective in two elementary ways. First, none of the communications before or after June 11, 1986, informed Traverso that he had the *right to a hearing*, as the high court has consistently required. (*Mullane* v. *Central Hanover Tr. Co.*, *supra*, 339 U.S. at p. 314 [94 L.Ed. at p. 873]; *Memphis Light, Gas & Water Division* v. *Craft*, *supra*, 436 U.S. at pp. 13, 22 [56 L.Ed.2d at pp. 41, 46-47].) Second, as this court has made unequivocally clear, in assessing a procedural due process challenge, "we must look to the procedure dictated by the terms of the ordinance, and not to informal practices implemented at the discretion of [government] adminis- trators. . . . ' " " 'It is not enough that the owners may by chance have had notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them a right to a hearing, and an opportunity to be heard.' " ' [Citations.]" (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 307, fn. 7 [138 Cal.Rptr. 53, 562 P.2d 1302].)

Fortunately for property owners in this country, the United States Su- preme Court has consistently adhered to the requirement that government provide property owners notice of their opportunity to be heard before it deprives them of their property. (See, e.g., *United States* v. *James Daniel Good Real Property* (1993) __ U.S. __ [126 L.Ed.2d 490, 114 S.Ct. 492].) Unfortunately for Traverso, this court has unaccountably denied him the right to adequate notice that he could contest the state's determination that his billboard was in violation of the Act.

"The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' " (*Memphis Light, Gas & Water Division*, *supra*, 436 U.S. at p. 14 [56 L.Ed.2d at p. 42].) The notice that Traverso received denied him due process because it failed to serve that purpose.

### CONCLUSION

Under the majority's interpretation of the due process clause, government notice to a property owner that his or her property is about to be seized and destroyed satisfies the federal Constitution even if the property owner is never informed he or she has the right to be heard on the legality of the

government's action. This violates basic principles of fairness. An opportunity to be heard, standing alone, is of little value to property owners who, like Traverso, learn about it only when a court has announced that they will lose their property because they failed to demand the hearing they were never informed they could have.

I would affirm the judgment of the Court of Appeal.

The petition of both respondent and appellant for a rehearing was denied March 3, 1994, and the opinion was modified to read as printed above. Kennard, J., was of the opinion that the petition should be granted.

APPENDIX

## OUTDOOR ADVERTISING SECTION EXHIBIT B
1120 N ST., P.O. BOX 1499, SACRAM●●. CALIFORNIA 95807

PERMIT
NUMBER OWNER
HIGHWAY DISPLAY # *FAP*
DISTRICT COUNTY ·. ROUTE POST MILE
*4* *15 (805)* *SON* *S/O SIERRA* *101* *11.88L*
DISPLAY LOCATION *BLVD (COTATI S/IT)*

DISPLAY OWNER *ADCO of NORTHERN CALIF.*
ADDRESS *P.O. BOX 368*
 *Belmont, CAL. 94002*

You are hereby notified that the display described is in violation of the Outdoor Advertising Act, and may be removed and destroyed if no action toward legalizing it is taken prior to *7-17-86*

TO AVOID MISUNDERSTANDING. ACKNOWLEDGE AND COMPLY PROMPTLY. DO NOT REMOVE CITATION FROM DISPLAY OR RETURN THIS NOTICE UNTIL VIOLATION HAS BEEN CORRECTED.

### EXPLANATION OF VIOLATION

[X] PERMIT NOT OBTAINED PRIOR TO INSTALLATION OF DISPLAY .(PENALTY FEE MUST BE ASSESSED)
[ ] FAILURE TO RENEW PERMIT (PENALTY FEE MUST BE ASSESSED)
[X] DISPLAY IS NOT ON LAND ZONED INDUSTRIAL OR COMMERCIAL *R'R*
[X] DISPLAY IS NOT WITHIN 1,000 FEET OF A BUSINESS ACTIVITY
[ ] DISPLAY IS LESS THAN 500/300/100 FEET FROM EXISTING DISPLAY ON SAME SIDE OF ROAD *CK*
[ ] DISPLAY IS LESS THAN 500 FEET FROM AN INTERCHANGE
[ ] OTHER

### AMOUNT OF PAYMENT DUE

APPLICATION FEE $_____ PERMIT FEE $_____ PENALTY $_____

FOR 19_____ TOTAL $_____

### DESCRIPTION OF DISPLAY

PAN HEIGHT *14* LENGTH *48* SQUARE FEET *672*
UPRIGHTS: NUMBER *5* SIZE *4X12* MATERIAL *Wood*
DISTANCE BETWEEN PANEL AND GROUND *25'* ILLUMINATION? *NO*
PANEL ON ONE SIDE [ ] PANELS ON TWO SIDES [ ] V-SHAPED DISPLAY [X] (REQUIRES 2 APPLICATIONS)

COPY ON PANEL(S) *S/F HOTEL LA ROSE - SANTA ROSA*

COPY *N/F TRAVELodge - NOVATO*

*Pat Guthrie Naylor* *6-11-86*
OUTDOOR ADVERTISING INSPECTOR DATE

CITATION NO. *12463*