**Jay ANGOFF, Respondent,**

v.

**HOLLAND–AMERICA INSURANCE COMPANY TRUST, Mission Reinsurance Corporation, Mission Insurance Company Trust, Borg–Warner Corporation, Borg–Warner Equities Corporation, Borg–Warner Insurance Services, Inc., Borg–Warner Acceptance Corporation, Borg–Warner Insurance Holding Corporation, Borg–Warner Financial Services, Inc., Robert E. LaRouche, Harold A. Lamm, Joseph P. Wolonsky, and Thomas G. Vannoy, Appellants.**

Nos. WD 51572, WD 51618.

Missouri Court of Appeals,
Western District.

Oct. 29, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Application to Transfer Denied
Feb. 25, 1997.

Phillip Rouse, Kansas City; Russell Selman, Chicago, IL, for appellants,

John Craft, Kansas City, for respondent.

SPINDEN, Judge.

This dispute concerns reinsurance companies' liability for incurred-but-not-reported (IBNR) losses in the liquidation of Holland–America Insurance Company. Reinsurance Association of America (RAA)[1] and Borg–Warner Corporation,[2] including other appellants associated with Borg–Warner (the Borg–Warner appellants), filed separate appeals from the circuit court's final order entered in August 1995 approving a final dividend liquidation plan submitted by Jay Angoff, director of the Missouri Department of Insurance, as Holland–America's receiver. The plan set forth instructions concerning the procedures to be used in administering claims against the trust estate of Holland–America and provided a claims bar date for amending claims. The

1. RAA is a trade association consisting of 26 reinsurance companies whose members reinsured Holland–America.

2. The Borg–Warner appellants are defendants in a lawsuit filed by the California Insurance Commissioner as liquidator and trustee of the Mission Insurance Company Trust and other estates of the Mission Company trusts.

plan authorized the filing of IBNR claims. The reinsurers contend that IBNR losses are too speculative and ask us to reverse the circuit court's order. We have consolidated the appeals.

### Facts

Holland–America was part of the Mission Insurance Group whose headquarters was in California. The Mission companies were placed into conservatorship in 1985 and into liquidation in both California and Missouri in 1987. In 1988, the insurance commissioners for California and Missouri agreed that Missouri law would govern the claims against Holland–America.

In March 1990, the circuit court ruled that claims against Holland–America could include IBNR losses, which, in essence, are estimates by insurers of claims which will be, but have not yet been, filed against a policy. Insurers use past experience to determine the amount of reserves which they should set aside for such claims. The reserves represent an insurer's best estimate of the amount of the final claim, given the information it has.

In this case, the IBNR losses included claims which accrued before termination of Holland–America's policies but which were not reported to the insurer or to liquidators before September 12, 1987, the deadline established in the Mission liquidation proceedings for filing claims. The 1990 order authorized the receiver to determine IBNR claims on a case-by-case basis and to permit IBNR claims which were "readily ascertainable" and could be proven within a reasonable time before the final distribution.

In December 1992, the circuit court entered an order setting forth the claims procedures to be implemented by the receiver to expedite the resolution of claims against Holland–America. The court concluded that § 375.1220 [3] authorized the receiver to settle claims and to determine claims by estimate, using methods based upon actuarial evaluations or other accepted methods of valuing claims with reasonable certainty.[4]

In December 1994, the California liquidator asked the Superior Court for the County of Los Angeles, California, to approve a final liquidation dividend plan and a final dividend claims bar date for contingent, unliquidated or undetermined claims against the trust estates of Mission Insurance Company and two other insurance companies in the Mission group chartered in California. The Superior Court approved the plan, but an appellate court reversed on the ground that California statutes expressly prohibited an award for IBNR claims. *Quackenbush v. Mission Insurance Company*, 46 Cal.App.4th 458, 54 Cal.Rptr.2d 112 (1996).

In August 1995, the Missouri circuit court adopted the findings and conclusions of the California liquidator concerning "long-tail" casualty risks [5] insured by the Mission companies, including the Holland–America trust. Because of the "long-tail" risks, the trust estates could have to remain open for 30 years or more awaiting resolution of claims in the courts.

The receiver complained that delaying the trust's closure for that long was not feasible and recommended that the circuit court adopt a "final dividend approach" which would expedite the resolution of claims and would result in savings to the trust estate. The circuit court adopted the "final dividend approach" and set a deadline of September 12, 1995, for contingent, unliquidated and undetermined claims, including IBNR claims. It ordered claimants to report losses and to

---

**3.** All statutory references are to the Missouri Revised Statutes 1994, unless otherwise indicated.

**4.** Section 375.1220.2 says, "If the fixing or liquidation of any claim or claims would unduly delay the administration of the liquidation or if the administrative expense of processing and adjudication of a claim or group of claims of a similar type would be unduly excessive when compared with the moneys which are estimated to be available for distribution with respect to such claim or group of claims, the determination and allowance of such claim or claims may be made by an estimate. Any such estimate shall be based upon an actuarial evaluation made with reasonable actuarial certainty or upon another accepted method of valuing claims with reasonable certainty."

**5.** These types of risks include various toxic tort and environmental claims.

provide claims information not previously reported as part of the final dividend liquidation plan. The court concluded that the receiver could settle and determine claims "by estimate, using methods based upon actuarial evaluations or other accepted methods of valuing claims with reasonable certainty as described in RSMo § 375.1220." The court said:

> The Receiver's determination of claims against the [Holland–America] Trust estate in accordance with the procedures previously adopted in the 1990 and 1992 Claims Orders and as set forth in this Order constitutes a reasonable method of determining the amount of the claims allowed against such estate, and a liquidation of liability on the part of the insolvent insurer's estate as of the date of its insolvency, for all purposes, including the collection of reinsurance proceeds from the reinsurers of [Holland–America]. Where applicable, the Receiver's claims determinations may include the present value of the future development and/or incurred but not reported loss component of [Holland–America's] liability. In accord with RSMo § 375.1202 and the Court's earlier orders in this proceeding, to the extent that future development of IBNR liability is a component of reinsurance payable to the [Holland–America] Trust estate, such liability and any corresponding liability of a reinsurer to the Receiver shall not be reduced as a result of this delinquency proceeding or any action taken herein, including the designation by the Court of the Final Dividend Claims Bar Date or passage of such date. Reinsurance proceeds payable on the basis of the liability of the [Holland–America] estate may be determined with reference to the [Holland–America] claims liquidated and allowed by means of and in accord with the procedures described in the 1990 Claims Order, the 1992 Claims Order, and as set forth herein. These proceeds include any reinsurance claims based on liabilities of [Holland–America] determined by means of an estimate in accord with § 375.1220.2.

The circuit court concluded that this approach would save the Holland–America trust estate administration costs by terminating the receivership proceeding sooner. RAA and Borg–Warner appeal.

## Reasonable Certainty

In its first point on appeal, RAA argues that the circuit court's granting the receiver discretion to accept IBNR claims was erroneous on the ground that Missouri law does not permit them because they cannot be proven with reasonable certainty. RAA argues that the court misapplied § 375.1220.2 in deciding that IBNR claims could be allowed.

RAA concedes that reinsurers can calculate the approximate amount of IBNR reserves needed to cover future claims, but it argues that IBNR reserves should not be deemed liabilities presently due and owing and that the reinsurer's indemnity obligation does not encompass IBNR losses. RAA asserts that contingent liabilities are not allowable in insolvent estates and that IBNR losses do not meet the requirements of § 375.1208.[6]

Angoff argues that Missouri allows for IBNR claims in a liquidation under §§ 375.1220.2,[7] 375.1210,[8] and 375.1212.4.[9]

---

6. Section 375.1208.1 says, "Proof of claim shall consist of a statement signed by the claimant that includes all of the following that are applicable: (1) The basis of the claim including the consideration given for it; (2) The identity and amount of the security on the claim; (3) The payments made on the debt, if any; (4) That the sum claimed is justly owing and that there is no setoff, counterclaim or defense to the claim; (5) Any right of priority of payment or other specific rights asserted by the claimants; (6) A copy of the written instrument on which the claim is based; and (7) The name and address of the claimant and the attorney who represents him, if any."

7. Quoted at Note 4, supra.

8. Section 375.1210.2 says, "A claim may be allowed even if contingent, if it is filed in accordance with section 375.1206. It may be allowed and may participate in all distributions declared after it is filed to the extent that it does not prejudice the orderly administration of the liquidation."

9. That provision says, "The liability of the insurer relating to liabilities incurred, but for which claims relating to such liabilities are not reported, accrued or claimed, shall be determined with

Angoff further asserts that because premiums paid to the reinsurers include IBNR components, the reinsurer should not be able to avoid obligations for IBNR losses.

■ A receiver has broad discretion in conducting and managing a liquidation. *Lucas v. Manufacturing Lumbermen's Underwriters*, 349 Mo. 835, 163 S.W.2d 750, 757 (1942). Section 375.1220.2 authorizes the receiver to use "estimation by actuarial evaluations and other accepted evaluation methods" to determine claims so long as those determinations can be made with "reasonable certainty." The obvious problem with IBNR losses is that they must, by definition, rest on estimates, and estimates rarely can be subjected to the definitive evaluation which RAA seems to demand. The issue, then, is whether IBNR losses are so speculative that they fall outside the "reasonable certainty" mandate of § 375.1220.2.

■ Section 375.1210 addresses contingent claims in liquidation proceedings and expresses the General Assembly's intent to allow for third parties' contingent claims under certain circumstances: The claim must satisfy § 375.1206, which requires proof of claims in the form set out in § 375.1208. Although IBNR losses cannot satisfy § 375.1208's "proof-of-claim" requirement for a statement signed by the claimant showing basis of the claim, § 375.1206 says that "upon application by the liquidator the court may allow alternative procedures and requirements for the filing of proofs of claim or allowing or proving claims."

The General Assembly specifically endorsed IBNR claims in § 375.1212.4. The statute provides procedures for determining disputed policyholder claims relating to "liabilities incurred, but for which claims related to such liabilities are not reported, accrued or claimed."

The circuit court's 1990 and 1992 orders confirmed the receiver's authority to determine claims by estimation and actuarial evaluations. The reinsurers do not challenge these earlier orders. Indeed, RAA acknowledges that the prior orders were correct but claims that the amended order was inconsistent with the previous orders because it permitted the receiver to treat speculative and unliquidated IBNR losses as claims chargeable against the reinsurers. We disagree.

All of the orders acknowledge the receiver's authority to evaluate claims based upon proper estimates and to accept IBNR claims. The amended order cites § 375.1220 in stating that the estimates are to be "based upon actuarial evaluations or other accepted methods of valuing claims with reasonable certainty." The order further provides that claims which are not capable of being liquidated and determined, even by estimation, should not participate as allowed claims in the final dividend distribution.

Moreover, Holland–America's reinsurers received premiums which, when calculated, took into account the anticipated losses which the insurers had considered likely to be incurred under the policies. Those loss projections included IBNR loss reserves. Certain incurred losses were not reported before the claims bar date and have not yet been reported. Because the premiums charged for reinsurance included actuarial projections of expected IBNR losses, allowing reinsurers to avoid obligations based on a ceding company's liability for IBNR losses would be unjust. The reinsurers' obligations are based on the liability of the ceding company under the insolvency clauses in the reinsurance contracts. *See* § 375.246. Section 375.1202 provides that the amount recoverable by receivers from reinsurers "shall not be reduced as a result of the delinquency proceedings, regardless of any provision in the reinsurance contract or other agreement."

The Missouri insolvency statutes grant the receiver considerable discretion in evaluating

reference to the provisions of this subsection. In such an event, the amount of such liabilities shall be calculated, at their present value, by a panel appointed pursuant to this subsection. The liquidator and the claimant shall each appoint one arbitrator, and the court shall appoint a special magistrate who shall preside over all proceedings under this subsection. Thereupon, the panel shall hear and determine the amount of such liabilities pursuant to the procedures provided by sections 435.365 to 435.395, RSMo. Any party to the proceeding shall have all rights provided by sections 435.400 to 435.455, RSMo, and the provisions of said sections shall be applicable to such proceedings."

and determining claims by estimation using actuarial evaluation or other accepted methods of valuing claims with reasonable certainty. We believe this includes determinations for IBNR losses to the extent that those types of claims can be determined with reasonable certainty.

■ The receivership court has the discretion to expedite closure of the estate. *See State ex rel. Hyde v. Falkenhainer*, 309 Mo. 381, 274 S.W. 722, 725–26 (1925). This is what the claims procedure set forth in the amended order was designed to do. We, therefore, find no abuse of discretion or that the claims determination procedure was arbitrary.

## Constitutionality

■ RAA also claims that the circuit court's interpretation of Chapter 375 rendered the statutes an unconstitutional "taking" and a violation of its due process rights. The regulation of insurance business falls within the police power of the states. *See Medallion Insurance Company v. Wartenbee*, 568 S.W.2d 599, 601 (Mo.App.1978). A due process challenge on the state's police power will prevail only under limited circumstances and if the rules and regulations imposed are unreasonable. *Passler v. Johnson*, 304 S.W.2d 903, 908 (Mo.1957). The reinsurers agreed to insure a risk of losses incurred during the policy periods and due process is not offended by holding reinsurers to those obligations. RAA fails to show that the liquidation plan approved by the circuit court is unreasonable and therefore fails to demonstrate any due process violation. RAA also fails to show that the circuit court's adoption of the liquidation plan constitutes a "taking." The valid exercise of police power does not constitute a taking. *City of Kansas City v. Tayler*, 689 S.W.2d 645, 647 (Mo.App.1985). The adoption of a liquidation plan during liquidation proceedings is a valid exercise of police power and does not implicate the "takings" clauses.[10]

## Retrospective Application

■ Alternatively, RAA claims that § 375.1220 can be applied only prospectively because it affects substantive rights. We disagree. A statute which is procedural in nature "prescribes a method of enforcing rights or obtaining redress" and can be applied retroactively. *See Wilkes v. Missouri Highway and Transportation Commission*, 762 S.W.2d 27, 28 (Mo. banc 1988). Moreover, § 375.675, which was the predecessor of § 375.1220, and which was cited in the circuit court's 1990 order, specifically provided that the statute should be applied retroactively.

Section 375.1220 is procedural because it prescribes a method of evaluating claims in liquidation proceedings. We, therefore, conclude that the statute can be applied retroactively.

## Receiver's Discretion

■ The Borg–Warner appellants complain that the final order violates their procedural due process rights by vesting the receiver with exclusive authority to approve reinsurance claims. This, they contend, would wrongly allow the receiver to determine his own damages in the Borg–Warner action pending in California.

In support of their argument, the Borg–Warner appellants cite two inapposite cases, *Traverso v. Department of Transportation*, 6 Cal.4th 1152, 26 Cal.Rptr.2d 217, 864 P.2d 488 (1993), and *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). *Traverso* involved a billboard owner who challenged the constitutionality of California statutes authorizing state officials to remove offending billboards after 10 days' notice. While recognizing the owner's protectible property interest in its billboard and the statutes' providing a right to a hearing, the California Supreme Court held that the owner's failure to request a hearing was fatal to his due process challenge. *Id.*, 26 Cal. Rptr.2d at 225, 864 P.2d at 496. *Murchison* involved a contempt proceeding in which the judge who tried, convicted and sentenced the accused was the same judge who had acted as a one-person grand jury and who had charged the accused with contempt. The

**10.** The "takings" clauses are U.S. Const. amend V, and Mo. Const. art. I, § 26 (1945).

United States Supreme Court held that this violated the Fourteenth Amendment's due process clause. *Id.* at 139, 75 S.Ct. at 626.

The Borg–Warner appellants' due process rights have not been violated. The amended order sets out claims determination and appeal procedures which provide sufficient due process protection. Borg–Warner is still free to make this argument in the California courts.

We affirm the judgment.

ULRICH, C.J., P.J., and SMITH, J., concur.